**STATE of Indiana, CIVIL RIGHTS COMMISSION, Appellant–Plaintiff,**

v.

**COUNTY LINE PARK, INC., Paul D. Fox and Carolyn Fox, Appellees–Defendants.**

No. 27S02–0004–CV–270.

Supreme Court of Indiana.

Nov. 29, 2000.

Jacquelyn Thompson, Indiana Civil Rights Commission, Indianapolis, Indiana, Attorney for Appellant.

Mark E. Spitzer, Browne Spitzer Herriman, Stephenson Holderead & Musser, Marion, Indiana, Attorney for Appellees.

## ON PETITION TO TRANSFER

RUCKER, Justice

Under the Indiana Fair Housing Act, it is unlawful to discriminate based on familial status. The Act defines familial status in part as a parent or custodian who is domiciled with "an individual" under the age of eighteen. We conclude that the Act also protects families living with more than one individual under the age of eighteen.

### Factual and Procedural History

In December 1996, James and Martha Cain purchased a three-bedroom mobile home located in a mobile home park owned and operated by County Line Park, Inc. ("County Line"). The Cains submitted a written application to County Line to rent a lot in the park. The application indicated that in addition to the Cains their four children, ages sixteen, nine, six, and two, would also live in the home. Paul Fox, president of County Line, responded to the Cains that he was denying their application because of County Line's long-standing policy of not renting mobile home lots to families with more than two children.

In February 1997, James Cain filed an administrative complaint with the Indiana Civil Rights Commission ("Commission") and the U.S. Department of Housing and Urban Development ("HUD"). Initially the complaint named County Line and Paul Fox as defendants and alleged discrimination in housing based on familial status and the disability of one of the Cains' children. The complaint was later amended to include Martha Cain as an additional plaintiff and Carolyn Fox, secretary of County Line, as an additional defendant. The Commission conducted an investigation and in January 1998 issued a notice that concluded there was reasonable

cause to believe discrimination based on familial status had occurred in violation of the Indiana Fair Housing Act ("Act"), Ind. Code §§ 22–9.5–1–1 *et seq.*, and the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631. The notice did not find reasonable cause with respect to the disability of one of the Cains' children. County Line and the Foxes (collectively referred to as "Landowners") then elected to have the merits of the complaint tried in a civil action rather than by an administrative law judge.[1]

In March 1998, the Commission filed a complaint in Grant Superior Court on its own behalf and on behalf of James and Martha Cain alleging that Landowners had violated the Act by refusing to rent the mobile home lot to the Cains based upon its two children per mobile home occupancy limit. In response, Landowners filed a motion to dismiss the complaint under Indiana Trial Rule 12(B)(6) contending that although the Act prohibits discrimination against families in general, it does not provide protection to "large families" such as the Cains. Landowners also contended that under the Act, the Foxes, as corporate officers and shareholders of County Line, could not be sued in their individual capacities. Landowners sought attorney's fees pursuant to the "prevailing party" provision of the Act. The trial court granted the motion to dismiss and awarded attorney's fees to Landowners of $350. The Commission appealed. The Court of Appeals affirmed the judgment and remanded the case to the trial court for a determination of appellate attorney's fees. *Civil Rights Comm'n v. County Line Park, Inc.,* 718 N.E.2d 768 (Ind.Ct. App.1999). Having previously granted transfer, we now reverse the judgment of the trial court.

### Discussion

#### I.

The Act makes it unlawful to "refuse to sell or to rent after the making of a bona

---

1. Indiana Code § 22–9.5–6–12(a) provides, "A complainant, a respondent, or an aggrieved person on whose behalf the complaint was filed may elect to have the claims asserted in a finding of reasonable cause decided in a civil action...."

fide offer, refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of race, color, religion, sex, *familial status,* handicap, or national origin." Ind. Code § 22–9.5–5–1(a) (emphasis added). A discriminatory act based upon familial status is committed if the person who is the subject of the discrimination is:

> (1) pregnant;
>
> (2) domiciled with *an individual* younger than eighteen (18) years of age in regard to whom the person:
>
>> (A) is the parent or legal custodian; or
>>
>> (B) has the written permission of the parent or legal custodian for domicile with that person; or
>
> (3) in the process of obtaining legal custody of an individual younger than 18 years of age.

Ind. Code § 22–9.5–1–2 (emphasis added).

■ The Act borrows heavily from the FHA, with many parallel provisions and similar language. In fact, the first section of the Act declares that its purpose is "to provide rights and remedies substantially equivalent to those granted under federal law." Ind. Code § 22–9.5–1–1. In relevant part, the FHA provides: " 'Familial status' means *one or more individuals* (who have not attained the age of 18 years) being domiciled with (1) a parent or another person having legal custody...." 42 U.S.C. § 3602(k) (emphasis added). Seizing on the "an individual" language of the Act in contrast to the "one or more individuals" language in the FHA and relying on principles of statutory construction, the Court of Appeals reasoned that the Act should be read more narrowly than its federal counterpart. *County Line,* 718 N.E.2d at 772. We disagree with our colleagues on the Court of Appeals.

■ The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Collier v. Collier,* 702 N.E.2d 351, 354 (Ind. 1998). The statute is examined as a whole,

and it is often necessary to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. *Id.* The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Riley v. State,* 711 N.E.2d 489, 495 (Ind.1999). Applying these principles to the Act, we must conclude that limiting protection to families living with only "an individual" under the age of eighteen would produce a result we do not believe the legislature could have intended. For example, Landowners argue that numerical occupancy restrictions are permissible based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit. We have no problem with this general proposition. Indeed the Act specifically provides that it "does not affect a reasonable local or state restriction on the maximum number of occupants permitted to occupy a dwelling...." Ind. Code § 22–9.5–3–6(a). However, to read the Act as Landowners insist would mean that it protects from discrimination families comprised of four adults and one child but not families comprised of two adults and three children. And this is so even though the numbers are the same.

■ Further, in construing Indiana civil rights law we look to federal case law for guidance. *Indiana Civil Rights Comm'n v. Alder,* 714 N.E.2d 632, 636 (Ind.1999). Federal courts as well as HUD have held that occupancy limitations based on the number of children as opposed to reasonable spatial considerations violate the FHA. *See Kelly v. HUD,* 3 F.3d 951, 952 (6th Cir.1993) (holding that apartment owners' one child per bedroom policy violated the familial status provisions of the FHA); *HUD v. Sams,* Fair Hous.—Fair Lend. (P–H) ¶ 25,069 (HUD A.L.J. March 11, 1993), *aff'd without opinion,* 76 F.3d 375, 1996 WL 13810 (4th Cir.1996) (holding that landlord's refusal to rent a house to a family because it had "too many children" constituted familial status discrimination in

violation of the FHA). We view the federal approach as appropriate here. Thus, despite the difference in wording, the Act should not be interpreted more narrowly than the FHA. Accordingly, under the Act families living with one or more individuals under the age of eighteen are entitled to protection from familial status discrimination.

## II.

■■■ We turn then to the question of whether the trial court properly granted Landowners' motion to dismiss the Commission's complaint. In reviewing a 12(B)(6) motion to dismiss, we look at the complaint in the light most favorable to the plaintiff, with every inference drawn in its favor, to determine if there is any set of allegations under which the plaintiff could be granted relief. *Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 945 (Ind.1999); *Ratliff v. Cohn*, 693 N.E.2d 530, 534 (Ind.1998); *Cram v. Howell*, 680 N.E.2d 1096, 1096 (Ind.1997). A dismissal under Trial Rule 12(B)(6) is improper unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Thomson Consumer Elecs., Inc. v. Wabash Valley Refuse Removal, Inc.*, 682 N.E.2d 792, 793 (Ind.1997). Dismissals under Trial Rule 12(B)(6) are "rarely appropriate." *Obremski v. Henderson*, 497 N.E.2d 909, 910 (Ind.1986).

■■■ There are two theories by which a plaintiff may establish a prima facie case of housing discrimination: disparate treatment and disparate impact. *Snyder v. Barry Realty, Inc.*, 953 F.Supp. 217, 219 (N.D.Ill.1996). The two follow distinct evidentiary paths. To establish a prima facie case of disparate treatment, a plaintiff must prove, by either direct or circumstantial evidence, that the defendant intentionally discriminated against the plaintiff based on familial status. *Kormoczy v. HUD*, 53 F.3d 821, 824 (7th Cir.1995). If the plaintiff succeeds, then the defendant must prove that it would have made the

same decision absent any reliance on familial status. *Id.* By contrast, to establish a prima facie case of disparate impact, a plaintiff must prove that the defendant's actions had a discriminatory effect. *United States v. Badgett*, 976 F.2d 1176, 1178 (8th Cir.1992). If the plaintiff succeeds, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Id.* If the defendant satisfies this burden, then the plaintiff has the opportunity to prove that the legitimate reasons asserted by the defendant are in fact mere pretext. *Id.* In order to survive a challenge under Trial Rule 12(B)(6) for disparate treatment, a plaintiff need only allege intentional discrimination. *See Kormoczy*, 53 F.3d at 824. Likewise, in order to survive a challenge under Trial Rule 12(B)(6) for disparate impact, a plaintiff need only allege discriminatory effect. *See Snyder*, 953 F.Supp. at 219.

■■■ In the case before us, the Commission alleged in its complaint that the Cains submitted a written application to County Line to rent a mobile home lot; the mobile home would accommodate two adults and four children under the age of eighteen; County Line had a two children per mobile home occupancy limit regardless of the number of bedrooms or square footage in the mobile home; and County Line relied on this policy to deny the Cains' application to rent the mobile home lot. R. at 6–11. It is clear that at the very least the allegations in the Commission's complaint support a claim for disparate treatment, namely: that County Line intentionally discriminated against the Cains based on familial status.

■■■ The Commission also sued Paul and Carolyn Fox in their individual capacities as shareholders and corporate officers of County Line. Landowners contend the trial court properly granted its 12(B)(6) motion to dismiss as to the Foxes because "it is hornbook corporate law that officers and shareholders are generally not personally liable for the acts or contractual

obligations of the corporation." Brief of Appellees at 13. It is true that an officer of a corporation is generally not personally liable for the torts of the corporation or other officers or agents merely because of her office. *Hanson v. St. Luke's United Methodist Church*, 682 N.E.2d 1314, 1320 (Ind.Ct.App.1997), *aff'd in part, vacated in part on other grounds by* 704 N.E.2d 1020 (Ind.1998). However, an officer is personally liable for the torts in which she has participated or which she has authorized or directed. *Palace Bar, Inc. v. Fearnot*, 376 N.E.2d 1159, 1169 (Ind.Ct.App.1978), *vacated on other grounds by* 269 Ind. 405, 381 N.E.2d 858 (1978); *Gable v. Curtis*, 673 N.E.2d 805, 809 (Ind.Ct.App.1996) ("It is well-settled that a corporate officer cannot escape liability for fraud by claiming that he acted on behalf of the corporation when that corporate officer personally participated in the fraud."); Ind. Code § 23–1–26–3(b) [the Business Corporations Act] ("Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation except that the shareholder may become personally liable by reason of the shareholder's own acts or conduct."); *cf. Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1236 n. 7 (Ind.1994) (holding that corporate officer can be personally liable for inducing the corporation to breach its contract if he is acting outside the scope of his official duties or for personal gain). These principles apply also to cases involving alleged housing discrimination. *See, e.g., City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1098 (7th Cir. 1992) (holding that sole owner/chief executive officer of corporation was personally liable for violating the FHA because he supervised the day-to-day operations of the corporation and its agents); *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1312 (5th Cir.1991) (holding that the magistrate erred in granting a directed verdict in favor of the officers of the corporation because if the jury found that the officers directly participated in or authorized the

discrimination in the sale of the home, they could be held personally liable); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir.1974) (permitting complaint under the Civil Rights Act not only against the officers of the closely held corporation, but also against the shareholders because they "were on constructive notice of the [discriminatory housing] action and indeed were active participants in it since its inception.").

■ The question here is whether the allegations in the Commission's complaint, naming Paul and Carolyn Fox in their individual capacities as officers and shareholders of County Line, are sufficient to withstand a 12(B)(6) motion to dismiss. We conclude that they are sufficient. To support its request to hold the Foxes personally liable, the Commission alleged the following: Paul Fox and Carolyn Fox, husband and wife, are "President and Secretary, respectively, of County Line Park, Inc., through which they own and operate [County Line]," and that Paul Fox wrote the Cains stating that he was denying their application to rent the mobile home lot because "it has been policy of County Line Park for 25 years not to accept applications w/more [sic] than 2 children...." R. at 6–7. It is clear that the Commission has stated facts sufficient to allege that Paul Fox directly participated in an act of housing discrimination. Although the Commission did not specifically refer to Carolyn Fox by name in the body of the complaint, she was joined as a defendant in this action, and the complaint does allege: "[t]he actions of the *defendants* in denying [the Cains] their right to fair housing and equal housing opportunity were intentional and in wanton and reckless disregard of the Indiana Fair Housing Act" and "[the two children per mobile home occupancy limit] constitute[s] [a] pattern or practice by the *defendants* of resistance to the full enjoyment of rights secured by the [Act]." R. at 11, 12 (emphasis added). With regard to any defendant, whether the Commission can carry

its burden of proof at trial remains to be seen. However, at this stage of the proceedings, looking at the complaint in the light most favorable to the Commission with every inference drawn in its favor, we must conclude that the allegations in the Commission's complaint entitle it to relief against all defendants for discrimination in housing based on familial status as defined by the Act.

### Conclusion

The judgment of the trial court is reversed and this cause is remanded for further proceedings.

SHEPARD, C.J, and SULLIVAN and BOEHM, JJ., concur.

DICKSON, J., concurs except as to the reversal of the order dismissing the action as to defendant Carolyn Fox, which he would affirm.