PERFECTION BAKERIES,
INC., Appellant,

v.

REVIEW BOARD OF the DEPART-
MENT OF WORKFORCE DEVEL-
OPMENT and Frank A. Ellet, Appel-
lee.

No. 93A02–0208–EX–661.

Court of Appeals of Indiana.

Feb. 20, 2003.

Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General of Indiana, Fred O. Towe, Geoffrey S. Lohman, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, Attorneys for Appellee.

BAILEY, Judge.

### Case Summary

Perfection Bakeries, Inc. (Perfection) appeals the decision of the Review Board of the Indiana Department of Workforce Development (Review Board) affirming and adopting the Administrative Law Judge (ALJ)'s determination that Perfection's employees were entitled to unemployment benefits if otherwise eligible because their unemployment was not the result of a labor dispute and because there was no credible threat of a strike. We affirm.

### Issue

The issue presented in this appeal is whether the Review Board's decision was contrary to law.

### Facts and Procedural History

Perfection and its route salesmen, who are members of Teamsters Unions 135 and 414 (the Union), had a union-negotiated contract in effect from December 6, 1998

until December 8, 2001.[1] Perfection and the Union began negotiations for a new contract on November 6, 2001, when the two sides exchanged proposals. Around that time, union members authorized the Union to call a strike if necessary. The parties met again to continue their discussions on November 14, 2001. Prior to the next scheduled meeting on November 28, 2001, Perfection asked the Union to agree to extend the contract until January 5, 2002 to provide enough time for negotiations and to ensure that Perfection's operations would not be affected during the holidays. The Union refused, confident that an agreement could be reached by December 8. Perfection informed the Union that if an agreement were not reached by the time the contract expired, the employees would not be permitted to return to work. The Union responded by stating that its members would strike if the contract expired without a new agreement.

The parties met on December 5, 2001 and discussed various counter-proposals, but came to no agreement on many significant issues. At the next meeting on Friday, December 7, 2001, Perfection submitted a comprehensive proposal to the Union. The Union offered to discuss and negotiate the terms of the proposal for the remainder of the day and evening, and into the next day if necessary. Perfection, however, told the Union that the proposal was its best and final offer and indicated that if the offer were not accepted by 8:00 p.m. on December 8, the employees would be locked out. The Union told Perfection that it could not comply with the deadline because the employees would not have a chance to vote on the proposal until the Union's next meeting on Sunday, December 9, a day on which no work was scheduled. The meeting adjourned without further negotiation and without resolution.

The Union, which had not accepted Perfection's contract offer by the December 8, 2001 deadline, met as scheduled on December 9. After discussing the situation and Perfection's proposal, the Union decided that its members would report to work as usual on December 10, which evidently was the next scheduled work day. The employees were, however, locked out. The Union began picketing several days later. Mechanics and drivers employed by Perfection, who were covered by different contracts and were not members of the Union, refused to cross the picket lines.[2] The Union stopped picketing on December 21, 2001, but its members remained locked out until they returned to work on January 7, 2002 under the terms of the prior contract.

In the meantime, after the lockout began, union member Frank A. Ellet filed a Request for Determination of Eligibility for unemployment compensation benefits, and the Indiana Department of Workforce Development requested a hearing by the ALJ. The ALJ conducted a hearing on February 13, 2002, and issued her decision on April 12, 2002. In particular, the ALJ concluded that the Union's employees were not unemployed due to a labor dis-

---

1. Article 36 of the contract provided that the agreement would be "in full force and effect from December 6, 1998, to and including December 8, 2001, and shall continue from year to year hereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration." (App.150.) Although there was no testimony regarding written notice of termination, both parties appear to have agreed at the hearing that the contract was scheduled to expire on December 8, 2001.

2. It was not disputed that these employees were permitted under the terms of their contracts to decline to cross the Union's picket lines.

pute, and that the employees had not been locked out as a result of a threatened strike, and were therefore entitled to unemployment benefits if otherwise eligible. Perfection appealed to the Review Board, and the Review Board affirmed and adopted the ALJ's decision on June 12, 2002. Perfection now appeals.

## Discussion and Decision

### A. Standard of Review

■ The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." IND. CODE § 22–4–17–12(a). Review Board decisions may, however, be challenged as contrary to law, in which case the reviewing court examines "the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts." IND.CODE § 22–4–17–12(f). Under this standard, we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions. *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind.1998).

Review of the Board's findings of basic fact is subject to a "substantial evidence" standard of review. [*McClain*, 693 N.E.2d at 1317.] In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Board's findings. *General Motors Corp. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 671 N.E.2d 493, 496 (Ind.Ct.App.1996). We will reverse the decision only if there is no substantial evidence to support the Board's findings. *KBI, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 656 N.E.2d 842, 846 (Ind.Ct.App.1995).

The Board's determinations of ultimate facts involve an inference or deduction based upon the findings of basic fact and is typically reviewed to ensure that the Board's inference is reasonable. *McClain*, 693 N.E.2d at 1317–18. We examine the logic of the inference drawn and impose any applicable rule of law. *Id.* at 1318. Some questions of ultimate fact are within the special competence of the Board, and it is therefore appropriate for us to accord greater deference to the reasonableness of the Board's conclusion. *Id.* However, as to ultimate facts which are not within the Board's area of expertise, we are more likely to exercise our own judgment. *Id.*

Finally, we review conclusions of law to determine whether the Board correctly interpreted and applied the law. *Parkison v. James River Corp.*, 659 N.E.2d 690, 692 (Ind.Ct.App.1996). In sum, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the Board's finding is a reasonable one. *McClain*, 693 N.E.2d at 1318. The amount of deference given to the Board turns on whether the issue is one within the particular expertise of the Board. *Id.*

*Stanrail Corp. v. Review Bd. of Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1202 (Ind.Ct.App.2000), *trans. denied.*

### B. Analysis

■ Pursuant to the Indiana Unemployment Compensation Act, an employee is ineligible for unemployment compensation benefits for unemployment due to a stoppage of work that exists because of a labor dispute. IND.CODE § 22–4–15–3(a). However, because the primary purpose of the Act is " 'to provide for the payment of benefits to persons unemployed through no fault of their own,' " not every controversy concerning the terms and conditions

of employment amounts to a labor dispute under the Act. *USS v. Review Bd. of Ind. Empl. Sec. Div.*, 527 N.E.2d 731, 737 (Ind. Ct.App.1988) (quoting *City Pattern & Foundry Co. v. Review Bd.*, 147 Ind.App. 636, 263 N.E.2d 218, 221–22 (1970)). Rather,

> [a] labor dispute exists where the bargaining is not in a fluid state and an impasse has developed in the negotiations. *Bootz Manufacturing Co. v. Review Bd. Emp. Sec. Div.*, (1968) 143 Ind.App. 17, 237 N.E.2d 597. An impasse is defined as an absence of an atmosphere in which a reasonably foreseeable settlement of the disputed issues might be resolved. *Abbett v. Review Bd. of Indiana Emp. Sec. Div.*, (1971) 150 Ind.App. 202, 275 N.E.2d 827. A settlement is not reasonably foreseeable when the parties are deadlocked on certain crucial issues without which an ultimate agreement is not possible. *Gold Bond Bldg. Prod. Div. v. Review Bd.*, (1976) 169 Ind.App. 478, 349 N.E.2d 258. If the facts indicate that good faith negotiations are being conducted between labor and management, and that bargaining is in a fluid state such that there is no impasse, neither party can declare a labor dispute. *City Pattern & Foundry Co. v. Review Bd.*, (1970) 147 Ind. App. 636, 263 N.E.2d 218.

*Auburn v. Review Bd. of Ind. Empl. Sec. Div.*, 437 N.E.2d 1011, 1014 (Ind.Ct.App. 1982). In other words, if an employer locks its employees out while bargaining is in a fluid state in an atmosphere in which a reasonably favorable settlement might be reached, the employees are not unemployed due to a labor dispute, and may be eligible for unemployment benefits.

In this case, the Review Board, affirming and adopting the decision of the ALJ, concluded that there was no impasse in negotiations at the time Perfection locked members of the Union out, and that those employees, as well as the mechanics and drivers who refused to cross the picket lines, were not unemployed as a result of a labor dispute. In support of this conclusion, the Review Board noted that Perfection submitted a contract proposal to the Union at their December 7 meeting, just more than twenty-four hours before the existing contract was set to expire, but that the Union offered to work with Perfection that day and evening, and into the next day, to reach an agreement. As the Review Board found, however, Perfection refused to negotiate, telling the Union that its proposal had to be accepted by 8:00 p.m. the next day. The Union told perfection that it would be impossible to present and explain the proposal to its employees and hold a vote before the deadline, as December 7 and 8 were both working days and the employees were located throughout northern Indiana and in Michigan. The Union offered to present the proposal to its employees at their next meeting on Sunday, December 9, when no work was scheduled. Perfection indicated that this would be too late. Nevertheless, the Union and its members discussed Perfection's offer at the December 9 meeting and appeared at their jobs as usual on December 10, the next scheduled work day.

Perfection does not dispute these facts and does not take issue with the Review Board's conclusion that good faith negotiations possibly leading to resolution of the parties' differences regarding the terms of the contract were in a fluid state. Perfection contends, however, that an impasse existed with regard to the issue of extending the contract beyond the December 8, 2001 expiration date to allow these negotiations to continue. It is true that the Union initially refused Perfection's November 28, 2001 request to extend the existing contract until January 7, 2002, and that the parties exchanged respective

threats of a lockout and a strike. Nevertheless, the parties continued to negotiate, and neither party raised the issue of a lockout or a strike during the ensuing meetings. As of December 7, 2001, when Perfection presented what it described as its final offer, the Union made it clear that it was prepared to discuss the proposal up until the contract deadline, and that it would take the proposal to its members for a vote at their December 9 meeting, the day after the contract was due to expire. Given the fact that the Union indicated that it would work to achieve an agreement past the December 8 deadline, and the fact that the Union's members appeared for work on December 10, after the contract had expired, we cannot say that there was no chance for an agreement on some form of an extension as of the time Perfection locked its employees out, had the issue been raised. Thus, the Review Board's determinations that there was not an impasse in negotiations at the time of the lock out, and that the Union's employees were not unemployed as a result of a labor dispute, were not unreasonable and must be affirmed.[3]

■ Perfection also maintains that the Review Board erred in concluding that the employees were eligible for unemployment benefits, arguing that the employees were locked out after threatening to strike. There is some authority suggesting that employees are not unemployed through no fault of their own, and are thus ineligible for unemployment benefits, when they are locked out after threatening to strike. *See Gold Bond*, 349 N.E.2d at 264 (citing the statement in *Bootz*, 237 N.E.2d at 600, that "the record is devoid of any showing that

the ... employees had in any manner indicated that they might discontinue working if the employer did not accede to their terms.") The Court in *Gold Bond* was careful to note, however, that

> where there is no impasse and where ... there is a finding to the effect that the Union "agreed to operate on a day-to-day basis and all its members continued to appear for work with no evidence of any slowdown in production ...", a finding of "no strike threat" is not necessary to permit the inference that the claimants were unemployed through no fault of their own.

*Id.* at 265. In this case, the Review Board found that there was no impasse and found facts indicating that the employees were willing to continue working after the contract expired. Thus, according to *Gold Bond*, the Review Board had no obligation to find that there was no threat of a strike to support the conclusion that the employees were eligible for benefits.

Of course, the Review Board here specifically found that as of the lockout, there was no credible threat of a strike. This finding is not unreasonable and is supported by the evidence. While the Union responded to Perfection's November 28 lock out threat with its own threat to strike if no agreement were reached by the time the existing contract expired on December 8, neither side had repeated its mutual threats since the November 28 meeting. Rather, as the Review Board found, the Union told Perfection at the December 7 meeting that it was willing to negotiate the terms of an agreement at least until the contract's deadline, and that it planned to submit Perfection's Decem-

---

**3.** Perfection claims that the mechanics and drivers who refused to cross the picket lines were also unemployed as the result of a labor dispute and are thus ineligible for unemployment benefits. Our conclusion that the Review Board did not err by determining that the Union's members were not ineligible for unemployment benefits applies equally to these employees.

ber 7 offer to its members at a meeting scheduled for December 9, a day after the contract expired. Further, the employees reported to work as usual December 10, their next scheduled work day. These facts are not disputed, and support the Review Board's determination that as of the time Perfection locked its employees out, there was no existing credible threat of a Union-instigated work stoppage.

Affirmed.

ROBB and BARNES, JJ., concur.