**TRELLEBORG YSH, INC., a/k/a Trelleborg–Peru, Appellant–Respondent,**

v.

**BOARD OF INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Lynn Corcoran, Appellees–Petitioners.**

No. 93A02–0303–EX–185.

Court of Appeals of Indiana.

Nov. 13, 2003.

James D. Masur II, Heather L. Wilson, Locke Reynolds LLP, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Trelleborg YSH, Inc., a/k/a Trelleborg–Peru ("Trelleborg"), appeals the determination by the Review Board of the Indiana Department of Workforce Development ("Board") that Lynn Corcoran was entitled to unemployment compensation benefits for the weeks ending November 23, 2002, through December 14, 2002.

We affirm.

### ISSUE

Whether the Board erred when it determined that Corcoran was eligible for unemployment compensation.

### FACTS

In August of 2002, Trelleborg posted an announcement stating that due to a "downturn of business" and its "right to implement a permanent layoff as defined in the current" collective bargaining agreement (CBA), "employees will be placed on permanent lay-off" status. (App.79). It advised that pursuant to the CBA, "optional

lay-off may be provided to employees requesting same." *Id.* The announcement also stated that "if an optional layoff employee returns, the temporary hold for the previously-slated layoff will be lifted, and the least senior employee laid off." *Id.* The CBA further provided that "in the event there is a layoff that forces employees to the street, senior employees desiring optional layoff will have the right to be laid off" first upon certain conditions, and the optional layoff would be "granted to senior employees on the basis of seniority." (App 76–77).

Lynn Corcoran had been a Trelleborg employee since May 5, 1992. She chose to exercise her CBA seniority right to an optional layoff; on August 15th Trelleborg "granted" the "optional layoff" to Corcoran, and it began on August 16, 2002. (App.78).

On August 19, 2002, Corcoran filed a claim for unemployment benefits. Her claim was initially denied, and her appeal was then heard by an Administrative Law Judge. According to the ALJ's findings, Corcoran had made no effort to "seek work or employment during the period beginning with the week ending August 24, 2002, through the week ending November 16, 2002." (App.80). However, the ALJ found that she did seek work "during the period beginning with the week ending November 23, through the week ending December 7, 2002"; and "[d]uring the week ending December 14, 2002, [Corcoran] notified the employer involved here that she desired to return to work on January 6, 2003." (App.81). The ALJ held that because Corcoran was able and available for work but failed to seek work during the period beginning with the week ending August 24, 2002, through the week ending November 16, 2002, she was "not entitled to benefit rights for such weeks." (App.81). However, because Corcoran was able to work, available for work, and "making an effort to secure full-time work as of the week ending November 23, 2002, through the week December 14, 2002," the ALJ held that she was "entitled to benefit rights for such weeks." *Id.*

Trelleborg appealed the ALJ's decision to the Board. Trelleborg argued that Corcoran was "voluntarily unemployed" and was "therefore disqualified from receiving unemployment benefits." (App.82). The Board affirmed the decision of the ALJ.

## DECISION

As provided by statute, "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." *Perfection Bakeries, Inc. v. Review Bd.*, 783 N.E.2d 736, 739 (Ind.Ct.App.2003) (quoting IND.CODE § 22–4–17–12(a)). The law further provides that when Board decisions are challenged as contrary to law, we examine "the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact." *Id.* (quoting I.C. § 22–4–17–12(f)).

Toward that end, we engage in the following steps. First, we review findings of basic facts under the "substantial evidence" standard, neither reweighing the evidence nor assessing the credibility of witnesses and considering only the evidence most favorable to the Board's findings. *Id.* Next, findings of "ultimate facts" are reviewed to ensure that the Board's inferences from the findings of basic fact are "reasonable." *Id.* Where questions of ultimate fact are within the special competence of the Board, we accord deference to the reasonableness of the Board's conclusion; but where the ultimate facts are not within the board's area of expertise, we may exercise our own judgment. *Id.* Finally, as to the Board's conclusions of law, we consider whether the Board correctly interpreted and applied the law. *Id.*

Trelleborg does not challenge the Board's factual findings that Corcoran was able to work, available for work, and seeking work for the period it found her eligible for benefits. Rather, Trelleborg challenges as contrary to law the determination that Corcoran was eligible for any benefits at all.

We begin by looking to the statutory framework for unemployment compensation benefits. Title 22 of the Indiana Code addresses Labor and Industrial Safety, and its Article 4 specifically concerns Employment and Training Services. Therein, Chapter 12 provides for the payment of certain unemployment compensation benefits "to any individual who is or becomes unemployed and eligible for benefits under the terms of" Article 4. I.C. § 22–4–12–1. Chapter 14 enumerates Benefit Eligibility Conditions, the first of which is the filing of a claim. According to I.C. § 22–4–14–1, the claimant must file a claim pursuant to the procedures found in Chapter 17. The statutory provision further states that

> a person accepting layoff under an inverse seniority clause of a validly negotiated contract be entitled to all benefits as any other unemployed person under the terms of this article provided that he meets the other requirements of this article.

I.C. § 22–4–14–1. The law then requires that the person "be registered for work at an employment office," I.C. § 22–4–14–2, and in order to "be eligible to receive benefits," the unemployed individual must be physically and mentally able to work, available for work, and found "to be making an effort to secure full-time work." I.C. § 22–4–14–3. Thereafter, Chapter 15 specifies various Disqualifications for Benefits. The first such disqualification is that the person "has voluntarily left his employment without good cause in connection with the work." I.C. § 22–4–15–1(a).[1]

Trelleborg initially argues that Corcoran was disqualified from eligibility for unemployment compensation benefits because she left her employment voluntarily, or "without good cause in connection with her work," when she "unilaterally elected to become unemployed via an 'optional layoff,' pursuant to the process set forth" in the CBA.[2] Trelleborg's Br. at 7. However, its argument fails to recognize the express statutory language concerning "a person accepting layoff under an inverse seniority clause of a validly negotiated contract." I.C. § 22–4–14–1.

■ We acknowledge that neither the ALJ's decision nor the Board's decision specifically references the statutory provision concerning an inverse layoff. Nevertheless, consistent with the premise that we grant great weight to the interpretation of a statute by an administrative agency charged with the duty of enforcing the statute, *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000), we will presume that the agency is familiar with the statutes under which it operates. Therefore, we consider it implicit that both the ALJ and the Board contemplated the application of I.C. § 22–4–14–1 to the ques-

---

1. The second "disqualification" is the individual's failure "without good cause to apply for available, suitable work." I.C. § 22–4–15–2. This is the basis upon which the ALJ found Corcoran ineligible for benefits for the period of late-August until mid-November, 2002.

2. Trelleborg's claim that Corcoran's action was "unilateral" ignores (1) the language in its own layoff announcement that indicated the availability of an optional layoff, and (2) the exhibit presented to the ALJ wherein Trelleborg stated that Corcoran and two other employees "have been granted optional layoff," but four other applicants "were denied." (App.78).

tion of Corcoran's eligibility for unemployment compensation benefits.

■ In its reply, Trelleborg argues that I.C. § 22–4–14–1 does not apply in Corcoran's case because she "was not laid off pursuant to an inverse seniority clause." Reply at 3. Trelleborg appears to contend that a layoff by seniority would result in the most senior employee being laid off first, with the opposite—or "inverse seniority"—being that the least senior was laid off first; and because as a senior employee Corcoran was allowed to take the layoff, there was no inverse seniority invoked here.

Trelleborg proffers a "universally recognized meaning" for "inverse seniority," but it relies upon contract language in cases from other jurisdictions. *Id.* at n. 2. We note that the record contains provisions from the CBA between Trelleborg and its union that define seniority and its application; however, these provisions were not referenced in the ruling admitting portions of the CBA as an exhibit. Without reference to the CBA definition of seniority and its application, we consider the common dictionary definition:

> a status attained by length of continuous service (as in a company, institution, or organization or in a department, job, rank, or occupational group) to which are attached by custom or prior collective agreement various rights or privileges (as preference in tenure, priority in promotion, and choice of work or shift) on the basis of ranking relative to others.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2066 (4th ed.1976). Inasmuch as one's "right," "privilege," "preference," "priority," or "choice" in the employee status setting would lead to the inference that the employee would *not* be the first laid off, a layoff by seniority would likewise

result in the most recently hired being the first to be laid off.

But pursuant to the CBA, a specific provision allows that "[i]n the event there is a layoff that forces employees to the street, senior employees desiring optional layoff will have the right to be laid off . . ." upon observing certain procedures. It continues, "Optional layoff will be granted to senior employees on the basis of seniority. . . ." This provision, reversing the typical layoff-according-to-seniority scheme, appears to constitute an "inverse layoff" procedure. We find additional support for the conclusion that this is an "inverse layoff" provision when we consider the other designated provision of the CBA—that for the procedure upon a senior employee's decision to return to employment. The "Request to Return from Optional Layoff" provision states as follows:

> Employees shall be placed on an optional layoff status until such time as all employees with less seniority in his job classification, within his department, have been recalled to such job classification or, he submits a written request to the Company stating his desire to return to work. . . . An employee submitting a written request to return to work shall be permitted to 'bump' to the job he held at the time of layoff provided a less senior employee is working on such job classification in the laid off employee's home department. If he does not have enough seniority to "bump" to his former job, he will be permitted to "bump" the least senior employee in his home department. If there are no less senior employees in his home department, he shall be permitted to "bump" the least senior employee in the plant . . . .

(App.77). This procedure is consistent with the conclusion that the CBA contemplates a traditional seniority system whereby the last hired would be the first laid off *unless*

a senior employee exercised the option of being laid off first, in which case there was an inverse seniority layoff. Hence, Trelleborg's argument in this regard must fail.[3]

Trelleborg also argues that "applying I.C. § 22–4–14–1 to the circumstances in the case at hand would directly contravene the explicit language of the Unemployment Compensation Act: 'to provide for payment of benefits to persons unemployed through no fault of their own ....'" Reply at 4. The assertion fails to recognize that when Trelleborg decided to exercise its "right" to implement a layoff, it expressly stated that some of its "employees will be placed on permanent lay-off" status. (App.79). Therefore, indisputably, Trelleborg employees would be "unemployed through no fault of their own." The CBA provision provides two possible methods of identifying those employees, but it does not alter the fact that some employees will be without employment based upon Trelleborg's decision and not the fault of the employee.

■ Trelleborg argues that the Board's reference in its appellate brief to decisions in California, Wisconsin and Washington law discussing their respective laws in this regard "is inapposite," essentially because those laws are different. We need not rely on the decisions from other jurisdictions because the Indiana statutes guide us as we observe the primary rule in statutory construction: to determine, give effect to, and implement the intent of the legislature. *Civil Rights Comm'n v. County Line Park*, 738 N.E.2d 1044, 1048 (Ind. 2000).

■ According to the statute, when a person "accept[s] layoff under an inverse seniority clause of a validly negotiated contract," that person "is entitled to all benefits as any other unemployed person under the terms of [Article 4] provided that he meets the other requirements of [Article 4]." I.C. § 22–4–14–1. The requirements by which "an unemployed individual *shall* be eligible to receive" unemployment compensation benefits are that the individual is physically and mentally able to work, available for work, and found to be making an effort to secure full-time work. I.C. § 22–4–14–2 (emphasis added). Subsequently, the statute contains a provision that disqualifies an individual for the purposes of receiving benefits when "an individual ... has voluntarily left his employment without good cause in connection with the work." I.C. § 22–4–15–1.

■ For two reasons, we find that the "inverse seniority" provision prevails over the disqualification provision. First, the disqualification provision is the more general, and "where provisions of a statute conflict, the specific provision takes priority over the general provision." *Componx v. Indiana State Bd. of Tax Comm'rs*, 741 N.E.2d 442, 446 (Ind.Tax 2000). Second, to construe the statute as initially providing that an individual *is eligible* to receive benefits if unemployed due to a layoff pursuant to a contractual inverse seniority provision; but then to further provide that the same individual *is not eligible* for benefits for having utilized the inverse seniority provision would produce an absurd result, having rendered the former provision meaningless. We presume the legislature to have intended the language used in the

---

**3.** The CBA provisions defining seniority and its application comport with both the dictionary definition and our reasoning based upon the other evidence before the ALJ. Therefore, even though those provisions were not expressly included in the ruling on the admis-

sion of the exhibit, we find Trelleborg's argument as to the meaning of a seniority layoff and an inverse seniority layoff troubling and refer counsel to Indiana Rule of Professional Responsibility 3.3, "candor toward the tribunal."

statute to be applied logically and not to bring about an unjust or absurd result. *Civil Rights Comm'n,* 738 N.E.2d at 1048. Therefore, we conclude that in the case of an individual whose unemployment is due to a layoff by the employer and the individual's exercise of a contractual inverse seniority provision, the individual is not disqualified from eligibility for employment benefits based upon having voluntarily left the employment.

Affirmed.

MAY, J., and BARNES, J., concur.