**C.G., LLC, Appellant,**

v.

**REVIEW BOARD OF THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, et al., Appellees.**

No. 93A02–1004–EX–441.

Court of Appeals of Indiana.

March 17, 2011.

Steven F. Pockrass, Robert F. Seidler, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Nora L. Macey, Barry A. Macey, Robert A. Hicks, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

SHARPNACK, Senior Judge.

*STATEMENT OF THE CASE*

Appellant C.G., LLC ("CG"),[1] appeals a decision by Appellee Review Board of the Indiana Department of Workforce Development ("the Board"). The Board determined that Appellees T.A. et al. (collectively, "Employees")[2] are entitled to unemployment insurance benefits ("benefits"). We reverse and remand.

*ISSUE*

CG raises one issue, which we restate as whether the Board erred in ruling that the Employees, who had participated in a buyout program and terminated their employment with CG, were entitled to benefits.

*FACTS AND PROCEDURAL HISTORY*

CG operates three auto parts factories in Indiana and other factories across the nation. In response to sharply declining economic circumstances, CG determined that it needed to reduce its workforce nationwide. CG closed several plants in other states, laid off workers, including some of the Employees, and designed several programs to encourage workers to retire or permanently resign from CG. CG offered one of these programs, the Enhanced Voluntary Termination of Employment Program ("EVTEP"), to all employees in the fourth quarter of 2008 and in the first quarter of 2009. EVTEP was available to both active employees and employees who had been laid off. EVTEP was not part of CG's seniority-based layoff program. Instead, employees who chose to participate in EVTEP resigned from CG and relinquished all recall rights and seniority rights. In exchange, employees who signed up for EVTEP in the fourth quarter of 2008 received a lump sum cash payout of $100,000 and six months of continuing health insurance coverage from CG. Employees who joined EVTEP in the first quarter of 2009 received a $75,000 lump sum cash payout, a vehicle purchase voucher for $25,000, and

---

1. We identify the parties by pseudonyms due to confidentiality requirements in cases concerning unemployment benefits. *See* Ind. Code § 22–4–19–6 (2010).

2. This case consists of the consolidated appeals of 165 former employees of CG. The cases were consolidated during Review Board proceedings and remain consolidated on appeal.

six months of continuing health insurance coverage from CG.

During this time, CG filed for bankruptcy and reorganized its operations. CG also requested and received financial assistance from the federal government. Despite these changes, the continued survival of CG was in doubt at the time CG issued EVTEP.

At the time that CG offered EVTEP to its workforce, some of the Employees were actively working and some had previously been laid off. The laid-off Employees were receiving unemployment benefits. All of the Employees participating in this case signed up for EVTEP and terminated their employment with CG. Subsequently, Employees who applied for unemployment benefits were denied, and previously laid-off Employees who had been receiving benefits found that their benefits were terminated. The Employees appealed to an Administrative Law Judge ("ALJ"). The ALJ determined that Employees who had been on indefinite layoff when they joined EVTEP were entitled to unemployment benefits, but Employees who were on temporary layoff or were actively working at CG at the time they signed up for EVTEP were not entitled to benefits.

CG and the Employees both appealed the ALJ's decision to the Board. The Board rejected the ALJ's distinction between actively working Employees and laid-off Employees for purposes of eligibility for benefits. The Review Board further determined that all of the Employees lacked good cause to voluntarily leave their employment when they took part in EVTEP and resigned from CG. If good cause for resignation were the sole issue, the Board stated, "the [Employees] would be disqualified from receiving unemployment benefits." Appellant's App. p. 6. Nevertheless, the Board concluded that all of the Employees remained eligible for unemployment benefits pursuant to Indiana Code section 22–4–14–1(c) (2008), which we discuss below. CG now appeals.

## DISCUSSION AND DECISION

When a Review Board decision is challenged as contrary to law, we consider the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. *McClain v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind. 1998). We neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Board's findings. *Id.* Propositions of law, such as the construction of a statute, are for a court to determine. *Id.* Nevertheless, an interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000).

The purpose of the unemployment compensation act is to provide benefits to those who are involuntarily out of work, through no fault of their own, for reasons beyond their control. *Wasylk v. Rev. Bd. of Ind. Employment Sec. Div.*, 454 N.E.2d 1243, 1245 (Ind.Ct.App.1983). An employee who has voluntarily left the individual's most recent employment without good cause in connection with the work is not entitled to benefits. *See* Ind.Code § 22–4–15–1 (2009).

As is stated above, this case turns on the application of Indiana Code section 22–4–14–1(c). That statute provides:

(a) Except as provided in IC 22–4–5–1 or subsection (b) or (c), an unemployed individual shall be eligible to receive benefits with respect to any week only if the individual has made a

claim for benefits in accordance with IC 22–4–17.

(b) A person who:

(1) accepts a layoff under an inverse seniority clause of a validly negotiated contract; and

(2) otherwise meets the eligibility requirements established by this article;

is entitled to receive benefits in the same amounts, under the same terms, and subject to the same conditions as any other unemployed person.

(c) This subsection does not apply to a person who elects to retire in connection with a layoff or plant closure and receive pension, retirement, or annuity payments. Except as provided in IC 22–4–5–1, a person who:

(1) accepts an offer of payment or other compensation offered by an employer to avert or lessen the effect of a layoff or plant closure; and

(2) otherwise meets the eligibility requirements established by this article;

is entitled to receive benefits in the same amounts, under the same terms, and subject to the same conditions as any other unemployed person.

We must apply this statute to the facts of this case in compliance with our rules of statutory construction, as follows:

When courts set out to construe a statute, the goal is to determine and give effect to the intent of the legislature. The first place courts look for evidence is the language of the statute itself, and courts strive to give the words their plain and ordinary meaning. We examine the statute as a whole and try to avoid excessive reliance on a strict literal meaning or the selective reading of individual words.

*Cooper Indus., LLC v. City of South Bend,* 899 N.E.2d 1274, 1283 (Ind.2009) (citations omitted).

CG asserts that under the plain language of the statute, the Employees are not entitled to benefits because CG did not offer EVTEP to avert or lessen the effect of a layoff or plant closure. We find this Court's opinion in *York v. Rev. Bd. of Ind. Employment Sec. Div.,* 425 N.E.2d 707 (Ind.Ct.App.1981), to be helpful in construing Indiana Code section 22–4–14–1(c), although the opinion predates the section at issue. In *York,* the employer, an auto manufacturer, was concerned about productivity problems and was trying to reduce personnel. The appellants, two employees, were offered an early retirement plan. One of the employees had been told that his job would be moved to a Detroit facility, and the other employee was concerned that his job classification, but not his job itself, would be eliminated and cause his income to be reduced. Both employees joined the retirement plan and filed for unemployment benefits. On appeal from the denial of benefits, the employees argued that they were separated from work for good cause due to lack of work. *Id.* at 710. This Court acknowledged that the auto industry was in economic distress at that time. Nevertheless, the employees retired due to risk of possible future changes at their employer, not due to a direct threat of layoff or termination. *Id.* at 711. Consequently, this Court concluded that the employees retired for personal reasons and were not entitled to benefits. *See id.*

The opinion in *Trelleborg YSH, Inc. v. Bd. of Ind. Dept. of Workforce Dev.,* 798 N.E.2d 484 (Ind.Ct.App.2003), provides a useful contrast to this case. In *Trelleborg,* which concerned what is now Indiana Code section 22–4–14–1(b), the employer notified its employees that it was implementing a

permanent layoff due to a downturn in business. *Id.* at 485. An employee, L.C., exercised her seniority right under the employer and employees' collective bargaining agreement to an "optional lay-off" instead of a permanent layoff. *Id.* at 486. L.C. subsequently filed for unemployment benefits, and the Board determined that she was entitled to partial benefits. On appeal, the employer argued that L.C. had not accepted an optional layoff pursuant to an inverse seniority clause. This Court disagreed and noted that the employer had implemented a permanent layoff, which would result in employees at L.C.'s place of work being deprived of employment through no fault of their own. *Id.* at 489. Thus, this Court concluded, the inverse seniority provision applied, and the Board properly determined that L.C. was entitled to benefits. *Id.* at 490.

Finally, in *S.A. v. Rev. Bd. of Ind. Dept. of Workforce Dev.*, 936 N.E.2d 336, 337 (Ind.Ct.App.2010), S.A. had been laid off from her job at an automobile parts factory and, while she was receiving unemployment benefits, accepted an early retirement package. The Board determined that S.A. was ineligible for unemployment benefits after accepting early retirement. On appeal, S.A. contended that she was already unemployed when she accepted early retirement, and her acceptance of the plan did not change her status. This Court, citing Indiana Code section 22-4-14-1(c), concluded that S.A.'s choice to accept the retirement plan due to her employer's troubled economic circumstances was a personal decision and did not constitute good cause for leaving work. *Id.* at 338.

Turning to the current case, the Board's application of Indiana Code section 22-4-14-1(c) was erroneous and inconsistent with the statute. In this case, as in *York* and *S.A.*, CG was experiencing economic trouble and hoped to reduce personnel. However, unlike the employer in *Trelleborg*, CG did not offer EVTEP in conjunction with a layoff or plant closure where the Employees worked, or threaten further layoffs or to close the plants where the Employees worked if EVTEP did not adequately reduce headcount. CG had closed plants in other states, but CG provided different programs to the employees in those facilities. Furthermore, the Employees who testified before the ALJ expressed general concern for the continued existence of CG, but none of them testified that they were aware of further planned layoffs or plant closures. In the absence of evidence that CG intended to close the plants where the Employees worked or layoff additional personnel at those plants, we conclude the EVTEP was not "offered to avert or lessen the effect of a layoff or plant closure" as to the Employees. Therefore, Indiana Code section 22-4-14-1(c) does not authorize the Employees to receive unemployment benefits. *See S.A.*, 936 N.E.2d at 338.

We are left with the Board's conclusion that, without the application of Indiana Code section 22-4-14-1(c), the Employees "did not have good cause to voluntarily leave their employment" and would be "disqualified from receiving employment benefits." Appellant's App. p. 6. The Employees do not challenge that conclusion. Consequently, the Board's decision that the Employees are entitled to benefits is erroneous.

*CONCLUSION*

For these reasons, we reverse the Review Board's decision and remand for further proceedings consistent with this opinion.

Reversed and Remanded.

BROWN, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

The purpose of statutory construction is, indeed, to give effect to the intent of the legislature. Here, the legislative intent is clear and provides guidance for our decision. Section 1 of the Unemployment Compensation Act states:

As a guide to the interpretation and application of this article, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale, and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this article to provide for payment of benefits to persons unemployed through no fault of their own, ... is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state.

Ind.Code § 22–4–1–1.

I believe that my colleagues' decision to deny unemployment compensation benefits to the claimants in this case contravenes this explicit directive, and for such reason, I respectfully dissent.

The Great Recession has had a catastrophic effect on this country and this state. Few, if any, industries were harder hit than automotive manufacturing, and the thousands of workers affected are unemployed through no fault of their own.

There is no evidence in the record before us that any Chrysler worker bundled mortgages having no value, speculated with other peoples' money in derivative securities that they did not understand, rated such worthless investments as secure, insured such investments without quantifying the risk or otherwise were responsible for throwing the economic security of the country and the world into jeopardy. The claimants were just welders and finishers and line workers whose world came crashing down around them.

To say that the workers who accepted EVTEP retired for personal reasons is to ignore economic reality. This economic reality was marked by layoffs and plant closings across our state and our country. Those layoffs and plant closings drove the decision of the claimants in this case to accept EVTEP. In this economic reality, Chrysler did not have to say that EVTEP was offered to lessen or avert a layoff or plant closing. Such fact was obvious to all. EVTEP was not offered by Chrysler because its financial prospects were good. To the contrary, EVTEP was offered by Chrysler to its workers because those prospects were dire.

The Review Board of the Indiana Department of Workforce Development concluded that the claimants accepted EVTEP as an offer of payment to avert or lessen the effect of a layoff or plant closure and that they otherwise met the eligibility requirements of the Act. I would defer to the Board and its expertise in employment matters and affirm its decision in all respects.