**Charles H. McCLAIN, Sr., Appellant,**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT & IUPUI Human Resources Department, Appellees.**

No. 93S02–9708–EX–456.

Supreme Court of Indiana.

April 20, 1998.

Rehearing Denied July 7, 1998.

Charles H. McClain, Sr., Indianapolis, for Appellant.

Jeffrey A. Modisett, Atty. Gen., Jon Laramore, Deputy Atty. Gen., Indianapolis, for Appellees.

Jamie L. Andree, Katherine Rybak, Israel Nunez-Cruz, Bloomington, for amicus curiae Legal Services Organization of Indiana, Inc.

### ON PETITION TO TRANSFER

BOEHM, Justice.

We granted transfer to consider under what circumstances an employer's termination of an employee for a knowing violation of a reasonable employer workplace policy under Indiana Code § 22–4–15–1(d)(2) meets the requirements that the rule be "uniformly enforced" when it is enforced for the first time. We also attempt to clarify the standard of review of the Unemployment Insurance Review Board's findings and conclusions. We affirm the Board's determination that the rule was uniformly enforced and therefore the termination was for just cause.

### Factual and Procedural History

Charles H. McClain, Sr. was fired from his job as a custodian at the Indiana University Medical Center in Indianapolis ("IUPUI") for violating IUPUI's policy that employees personally "clock out" their own timecards at the end of a work shift. When McClain began his employment with IUPUI he signed an employee information receipt which provided in part: "I must always use my time card to clock in when beginning work and clock out when ending/leaving work (including lunch break) for each shift I work." On the evening of the violation, McClain's supervisor saw a friend of McClain's, James Jones, sitting in the time clock room at 11:00 p.m. holding four time cards. The supervisor remained in the room until clock out time at 11:30 p.m. when he observed Jones clock out two of the four time cards—Jones's and McClain's—before he stopped Jones. McClain later claimed that he gave his timecard to Jones only a minute or two before 11:30 so he could help another of the four, who he said had car trouble. All four employees involved in the incident were suspended and then fired.

McClain applied to the Indiana Department of Workforce Development for unemployment benefits under Indiana Code §§ 22–4 *et. seq.* The Department determined McClain was terminated for "just cause" and suspended McClain's benefits. IND.CODE § 22–4–15–1(a) (Supp.1997). McClain appealed to an Administrative Law Judge who, after a hearing, agreed that

McClain was discharged for just cause. Specifically, the ALJ found that McClain was engaged in a "knowing violation of a reasonable and uniformly enforced rule of an employer." Under Indiana Code § 22–4–15–1(d)(2) this is a basis for denial of compensation. At the hearing, McClain testified that he knew of the timecard policy and was aware that a violation could result in a loss of his job. He said, however, that he thought he would be warned before he would be terminated. The supervisor testified that it was "standard practice" to fire employees who violate the policy but admitted that he knew of no other incidents of one employee clocking out another. IUPUI's representative at the hearing, the manager of records and unemployment compensation, testified that McClain was discharged for falsification of his timecard and that "the university treats that as a suspension subject to discharge in all departments." IUPUI introduced a copy of the written policy, partially quoted above, as an Exhibit. The ALJ concluded that McClain knew about the policy, and that it was reasonable and uniformly enforced.

The Unemployment Insurance Review Board affirmed the ALJ and McClain appealed to the Court of Appeals, which reversed on the issue of uniform enforcement. *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.,* 677 N.E.2d 1084, 1087 (Ind. Ct.App.1997). The majority held that in a case of the first instance of enforcement of a rule an employer must "establish a uniform policy by a plain and clear written rule which establishes what does and what does not constitute a violation and the punishment which will accompany a violation." *Id.* It concluded that IUPUI's rule in this case did not meet this test. Judge Barteau dissented, concluding that the question of uniform enforcement was a question of fact and that the Board's decision was supported by the evidence. *Id.* at 1088. We granted transfer.

### Standard of Review

The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." IND.CODE § 22–4–17–12(a) (Supp.1997). However, the statute

also includes explicit provision for judicial review in language virtually identical to that found in provisions for review of other administrative agency actions.[1] Indiana Code § 22–4–17–12(f) provides that when the Board's decision is challenged as contrary to law, the reviewing court is limited to a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision"; and (2) "the sufficiency of the evidence to sustain the findings of facts." Under this standard courts are called upon to review (1) determinations of specific or "basic" underlying facts, (2) conclusions or inferences from those facts, sometimes called "ultimate facts," and (3) conclusions of law. Courts uniformly recognize that propositions of law, such as the construction of the statute, are for the court to determine. *Parkison v. James River Corp.*, 659 N.E.2d 690, 692 (Ind.Ct.App.1996); *Pazzaglia v. Review Bd. of the Ind. Dep't of Employment & Training Servs.*, 608 N.E.2d 1375, 1376 (Ind.Ct.App.1993). There is less clarity in identifying what is a proposition of law. And the review of determinations of basic facts and ultimate facts has also generated a variety of formulations of the proper standard.

■■■ Review of the Board's findings of basic fact are subject to a "substantial evi-

dence" standard of review. *KBI, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 656 N.E.2d 842, 846 (Ind.Ct.App.1995) ("We will reverse [the Board's] decision only if there is no substantial evidence to support the findings...."). *See also City of Evansville & AFL–CIO v. Southern Ind. Gas & Elec. Co.*, 167 Ind.App. 472, 482–86, 339 N.E.2d 562, 571–73 (1975) (substantial evidence test applied to factual findings of the Utility Regulatory Commission under language almost identical to that of § 12(f)). In this analysis the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings.[2] *General Motors Corp. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 671 N.E.2d 493, 496 (Ind.Ct.App.1996).

■■■ The Board's conclusions as to ultimate facts involve an inference or deduction based on the findings of basic fact. These questions of ultimate fact are sometimes described as "questions of law." *Hehr v. Review Bd. of the Ind. Employment Sec. Div.*, 534 N.E.2d 1122, 1124 (Ind.Ct.App.1989); *Cf. City of Evansville*, 167 Ind.App. at 486, 339 N.E.2d at 573 ("the reasonableness of the

---

1. *Cf.* IND.CODE §§ 8–1–3–1 (Utility Regulatory Commission), 22–3–4–8(d) & 22–3–7–27(f) (Workers' Compensation Board), 23–2–3.1–11 (Securities Commissioner) (1993 & Supp.1997).

2. The substantial evidence test in this state has been explained as a set of subsidiary rules. One frequent formulation is that as a general rule the findings of the Board are conclusive and binding, IND.CODE § 22–4–17–12(a) (Supp.1997), unless they fall within one of the exceptions for which the court may reverse. These exceptions include but are not limited to:

   (1) The evidence on which the Review Board based its findings was devoid of probative value;

   (2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

   (3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

   (4) There was not substantial evidence supporting the findings of the Review Board;

   (5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary.

*General Motors Corp. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 671 N.E.2d 493, 496 (Ind.Ct.App.1996). These exceptions were tailored decades ago as part of determining the power of the judiciary to review agency action. *Warren v. Indiana Tel. Co.*, 217 Ind. 93, 117–19, 26 N.E.2d 399, 409 (1940). In *Warren* this Court said that reviewing courts have the duty to determine whether an agency's decision meets "the requirements of due process," one element of which is that findings are supported by the evidence. The exceptions were enumerated to balance the appropriate degree of deference to an agency's expertise and proximity to the evidence, with the demands of due process. Thus, "the finding will not be set aside because the agency did not conform to the court-made formulas of proof. If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value ... the order will be set aside." The Court went on to list two of the other exceptions listed above, and this list was later supplemented by additional exceptions. *See Mann v. City of Terre Haute*, 240 Ind. 245, 249, 163 N.E.2d 577, 579–80 (1960). In sum, these exceptions are not intended as an exclusive list but are simply variations on what it means to review for substantial evidence.

agency's inference is a question appropriate for judicial determination—a 'question of law' "). They are, however, more appropriately characterized as mixed questions of law and fact. As such, they are typically reviewed to ensure that the Board's inference is "reasonable" or "reasonable in light of [the Board's] findings."[3] *KBI, Inc.,* 656 N.E.2d at 846-47; *Hehr,* 534 N.E.2d at 1124; *Blackwell v. Review Bd. of the Ind. Dep't of Employment & Training Servs.,* 560 N.E.2d 674, 677 (Ind.Ct.App.1990). The term "reasonableness" is conveniently imprecise. Some questions of ultimate fact are within the special competence of the Board. If so, it is appropriate for a court to exercise greater deference to the "reasonableness" of the Board's conclusion. An example of such an ultimate fact would be whether the workplace rule is reasonable, which is not contested in this case. In evaluating this conclusion, if no proposition of law is contravened or ignored by the agency conclusions, the "reasonable" inference standard gives deference to the agency determination.[4] However, not all ultimate facts are within the Board's area of expertise. *See, e.g., id.* at 677-78 (reviewing whether the Board's findings supported its conclusion that the employee "voluntarily" left her job). As to these, the reviewing court is more likely to exercise its own judgment. In either case the court examines the logic of the inference drawn and imposes any rules of law that may drive the result. That inference still requires reversal if the underlying facts are not supported by substantial evidence or the logic of the inference is faulty, even where the agency acts within its expertise, or if the agency proceeds under an incorrect view of the law.

■ Providing a more exact standard is neither necessary nor desirable. Like the courts in Indiana, courts in other jurisdic-

tions have found it difficult to formulate a consistent, precise, and meaningful standard of review of agency action. Tests for "clear error," "substantial evidence," "clear error of judgment," or "arbitrary and capricious" action are often bandied about without any obvious benefit. *See generally* KENNETH CULP DAVIS, 5 ADMINISTRATIVE LAW TREATISE § 29:5 (2d ed. 1984). We agree with Davis that:

> the dominant scope of review is in the middle: Courts usually substitute judgment on the kind of questions of law that are within their special competence, but on other questions they limit themselves to deciding reasonableness; they do not clarify the meaning of reasonableness but retain full discretion in each case to stretch it in either direction.

*Id.* § 29:1, at 332 (emphasis omitted). In sum, basic facts are reviewed for substantial evidence, legal propositions are reviewed for their correctness. The best that can be said for ultimate facts or "mixed questions" as a general proposition is that the reviewing court must determine whether the Board's finding of ultimate fact is a reasonable one. The amount of deference given to the Board turns on whether the issue is one within the expertise of the Board.

## Application to this Case

■ In order to establish a prima facie case for violation of an employer rule under § 22-4-15-1(d)(2), the employer must demonstrate that the employee knowingly violated a reasonable and uniformly enforced rule. *Hehr,* 534 N.E.2d at 1125. In this case, McClain admitted he knew he violated the rule when he gave his time card to Jones. No one contends that the rule is not reasonable, and the Board concluded that it was.

---

3. It has been said that findings of fact—whether basic or ultimate—will be reversed only "if reasonable persons would be bound to reach a different result upon a consideration of the evidence from the perspective favoring the Board's decision." *Hehr,* 534 N.E.2d at 1125; *Gathering v. Review Bd. of the Ind. Employment Sec. Div.,* 495 N.E.2d 207, 209 (Ind.Ct.App.1986). It is not always clear whether this "reasonable person" test is applied to the review of basic facts or ultimate facts. It is most commonly recited simply as a basis for reversing the Board's decision,

whether as to basic or ultimate fact. *See, e.g., Williamson Co. v. Review Bd. of the Ind. Employment Sec. Div.,* 145 Ind.App. 266, 274, 250 N.E.2d 612, 616 (1969).

4. This "reasonable inference" standard is not to be confused with a separate inquiry specific to this case, whether an employer's policy is a "reasonable" one as the statute requires. IND CODE § 22-4-15-1(d)(2) (Supp.1997).

The sole issue is whether there was uniform enforcement of the rule.

■ The standard of review of the Board's decision depends in the first instance on whether uniform enforcement is a question of basic fact, ultimate fact, or a question of law. In order to evaluate uniformity one must first define the class of persons against whom uniformity is measured. This is usually a rule of law but it may be informed by appropriate findings as to employer practices, etc. In this case the definition of the class presents no issue; it is those employees who participate in vicarious clocking. Definition of the class can, however, be a significant issue. For example, in *General Motors Corp. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 671 N.E.2d 493, 498 (Ind.Ct.App.1996) the employer fired employees who were trafficking drugs. It was the first time that drug traffickers had been disciplined under the employer's drug policy, which prohibited a variety of conduct. A violation of the policy could result in discharge but the precise penalty for violation was discretionary with the employer. Prior to this incident, the employer had disciplined employees for drug possession but had not discharged them. The Board concluded that the policy was not uniformly enforced because the traffickers were treated differently from those who had possessed drugs. The Court of Appeals reversed, holding that there was uniform enforcement of the drug policy because the traffickers and possessors constituted separate classes of persons and treatment of each group was consistent within the group. The court's determination that traffickers and possessors were different for purposes of enforcing the drug policy was a review of the Board's decision of a question of law.

■ Once the class is defined, the question whether the employer treats the persons within a class consistently is a basic factual inquiry and is reviewed subject to the substantial evidence test and for conformity to law. *See, e.g., Citizens Gas & Coke Util. v. Review Bd. of the Ind. Employment Sec. Div.*, 471 N.E.2d 1175 (Ind.Ct.App.1984) (the evidence supported the Board's finding that there was no uniform enforcement where employees with worse attendance records than the discharged employee were still employed). In this case there is no issue as to the class of employees—those who do not punch their own timecards—against whom uniform enforcement is measured. Accordingly, the uniform enforcement inquiry is a question of basic fact. The question becomes whether the enforcement "is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike." *General Motors Corp.*, 671 N.E.2d at 498. We review this decision for substantial evidence. *KBI, Inc.*, 656 N.E.2d at 846. Here, both the supervisor and IUP-UI's representative stated that it was standard practice to discharge employees for violating the timecard policy. Further, McClain was not singled out for punishment: all four employees involved in the incident were fired. Although McClain alleged that the supervisor had once before witnessed a violation of the policy but done nothing, the supervisor denied these allegations. The Board and the ALJ found the supervisor's testimony credible and we do not revisit the credibility of witnesses on review. *Parkison*, 659 N.E.2d at 692. The Board's determination that the policy was uniformly enforced was supported by substantial evidence.

■ The Court of Appeals majority held that as a matter of law, when a rule is enforced for the first time, there cannot be uniform enforcement. The court required that the policy must include its own sanction to meet the standard for a "discharge for just cause" under § 22-4-15-1(d)(2). We disagree. A policy that has not been the basis for termination of an employee in the past may nonetheless be "uniformly enforced" even if only one person is the subject of an enforcement action, so long as the purposes underlying uniform enforcement are met. Uniform enforcement gives notice to employees about what punishment they can reasonably anticipate if they violate the rule and it protects employees against arbitrary enforcement. *See McClain*, 677 N.E.2d at 1087. This is important to ensure that employees who are denied compensation under this subsection are only those who lost their jobs for reasons within their control. *See Wasylk v. Review Bd. of the Ind. Employment Sec.*

*Div.,* 454 N.E.2d 1243, 1245 (Ind.Ct.App. 1983) (purpose of unemployment compensation legislation is to provide benefits to those involuntarily out of work through no fault of their own). Here, the purposes were met if, as the ALJ found, McClain knew of the violation, knew or can be fairly charged with knowledge that it could result in termination, and there was no arbitrary enforcement. These factual determinations are supported by substantial evidence. As such we accept them. *KBI, Inc.,* 656 N.E.2d at 846.

### Conclusion

We affirm the decision of the Unemployment Insurance Review Board.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., did not participate.