**Jeffrey D. LACHER, et al.,**
**Appellant–Claimant,**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, and Bemis Company, Incorporated, Appellees–Employer.**

**No. 93A02–1102–EX–163.**

Court of Appeals of Indiana.

Oct. 13, 2011.

Rehearing Denied Dec. 15, 2011.

---

Eric A. Frey, Frey Law Firm, Terre Haute, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee Review Board.

Kevin J. Kinney, Krukowski & Costello, S.C., Milwaukee, WI, R. Anthony Prather, Barnes & Thornburg, LLP, Indianapolis, IN, Attorneys for Appellee Bemis Company Incorporated.

## OPINION

KIRSCH, Judge.

Jeffrey D. Lacher ("Lacher")[1] and numerous employees (collectively, "the Employees") of Bemis Company, Incorporated ("Bemis") appeal from an adverse determination of their claims for unemployment benefits by the Review Board ("Review Board") of the Indiana Department of Workforce Development ("the Department"). The following issues are presented for our review:

---

1. The amendment to Administrative Rule 9(G), which incorporates by reference Indiana Code section 22–4–19–6, does not prohibit the use of full names of parties in routine appeals from the Review Board where it is essential to: (1) the resolution of litigation; or (2) the establishment of precedent or development of the law. *Moore v. Review Bd. of Ind. Dep't of Workforce Dev.*, 951 N.E.2d 301, 305–06 (Ind.Ct.App.2011).

I. Whether the Employees have waived appellate review of the issue of whether the Review Board erred by setting aside the prior decision of the Administrative Law Judge ("ALJ") based on jurisdictional defects and remanding the matter for a new hearing; and

II. Whether the decision of the Review Board affirming the decision of the ALJ denying the Employees' claims for unemployment benefits is supported by the findings of fact and conclusions thereon.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Bemis is the manufacturer of flexible packaging and has a facility in Terre Haute, Indiana, at which it employs between five hundred and one thousand workers. All of the union employees at Bemis are represented by Local 1426. Bill Kirby ("Kirby"), a press operator at Bemis, was the Union Vice–President, and Bob McNabb ("McNabb") was the Union President. John Haberman ("Haberman") was the Director of Corporate Labor Relations for Bemis.

In April 2009, Kirby told Haberman that the local union board represented the union members of Local 1426 and that Midwest Regional Joint Board, which included Pat Cronin ("Cronin"), was to assist them. The collective bargaining agreement ("CBA") was to expire on June 30, 2009, and negotiations for a new CBA took place. The existing CBA was extended from June 30, 2009 to July 21, 2009 at 11:00 p.m., as the parties were making progress. Haberman, on behalf of Bemis, and Cronin, on behalf of the union members, signed a memorandum of agreement on July 14, 2009, which set forth a tentative agreement on the new CBA. In the new CBA, Bemis wanted to include a pro-

vision for temporary employees. The union members, however, disagreed with the inclusion of the temporary employee clause and rejected any contract containing that clause. Out of approximately seven hundred and forty members, two-thirds of the members rejected the contract.

Haberman and Cronin continued to communicate and on July 21, 2009, Cronin telephoned Haberman to tell him that unless Bemis removed certain provisions from the new CBA and agreed to negotiate in good faith over other provisions, the union would go on strike beginning at 11:00 p.m. that day. Cronin had told Haberman that the union board had voted to implement a strike and walk off the job, but that a strike could be averted by modifying the new CBA to withdraw the temporary employee clause. Haberman told Cronin that Bemis could not meet that demand, that there was no need for the union members to go on strike, and that he would be willing to continue to negotiate, with or without an extension agreement. Cronin initially offered to continue to negotiate, but in a subsequent telephone call declined to continue negotiating. Local 1426 representatives were not aware that Cronin had communicated with Haberman about a strike.

At approximately 7:00 p.m. on July 21, 2009, which coincided with the beginning of a new shift, Bemis, anticipating a strike, began the process of winding down its operations in order to prevent damage to its equipment. The operation of the business was such that the machinery could not be shut down at 11:00 p.m. without damage. The employees were released as the equipment was shut down and were paid for the remainder of their shift.

Kirby read a prepared statement to the press that evening stating that an overwhelming number of the union membership had authorized the union board to strike in the event a new CBA had not

been reached by July 21, 2009. He further stated that the union had considered Bemis' most recent offer and had voted to reject the offer. He concluded by stating that Bemis was given the opportunity to avert a strike by modifying its offer, but that Bemis had not taken advantage of that opportunity.

At 11:04 a.m. on July 22, 2009, Haberman sent the following e-mail to Cronin and another representative of the union:

As you know, the Company continues to be prepared to meet with the union in an effort to arrive at an agreement for a new contract with Local 1426. Under the present circumstances, the Company is unavailable to meet this week as it is focused on handling issues that have arisen as a result of the Union's decision to strike effective 11:00 p.m. last night. Due to scheduling problems following this week, I will be unavailable until the week of August 10, 2009. Please provide dates you are available to meet during that week. In the interim, please find the Company's revised global proposal for a new contract.

*Ex. Vol.* at 58. Cronin's response to the e-mail follows:

John, just to get it on the written record, yesterday by phone call, I made an offer to avert a strike by requesting that you modify your final proposal by withdrawing your temporary employees proposal. You declined that offer. In response I informed you we were available, at a time & place of your choosing, to resume bargaining to resolve our differences any time the rest of the week. Your response to that offer is below and attached.

You are now refusing to meet until the week of August 10, and your revised proposal is significantly different from your Final Offer. We consider this move from your Final Offer bad faith bargaining. In answer to your question

regarding our availability the week of August 10, the Union is prepared to meet with you at any time or place of your choosing in Terre Haute during that week.

*Id.*

On July 22, 2009, seventy-nine employees chose to cross the picket line and continue to work. Other employees were brought to the facility to restart production. Security guards secured the perimeter of the facility, and employees were not allowed on the premises unless their names were on a list supplied to the guards. In order for an employee to return to work, the employee needed to contact Gary Brown ("Brown"), the human resources manager, to make the appropriate arrangements. Several of the union members who crossed the picket line were sanctioned by the union for conduct unbecoming a member, working as a strike breaker, and engaging in conduct violating union principles. Those union members filed a charge against the union with the National Labor Relations Board to complain about a breach of duty of fair representation.

Additional negotiations took place between Haberman and Cronin which culminated in the signing of a new memorandum of agreement on August 28, 2009. On that same date, Cronin made an unconditional offer on behalf of the union employees to immediately return to work. Bemis made automated calls to most employees to return to work on September 2, 2009.

The Employees made a claim for unemployment benefits. On July 22, 2009, the Unemployment Insurance Appeals Division of the Department mailed a notice of filing to "[ ] LACHER ET AL—SEE ATTACHED CLAIMANT LIST," but did not name claimants on the notice or attach the claimant list. *Ex. Vol.* at 1. On May 10, 2010, a notice of hearing was mailed, but no claimant list was attached, and Bemis

was named as the employer, but no address was listed. *Id.* at 14. A notice of continuance mailed on May 18, 2010, indicated that the claimants had requested a postponement of the hearing, and that a notice of the new hearing date would be mailed later. *Id.* at 20. That notice did not identify all of the claimants and listed only Bemis' name, but not the address. *Id.* A notice of hearing date mailed on May 19, 2010, indicated that the hearing date was June 8, 2010, provided Bemis' name and address, but did not include the attached list of claimants' names. *Id.* at 21.

The ALJ conducted a hearing on June 8, 2010, at which no one appeared on behalf of Bemis. On July 14, 2010, the ALJ issued a decision in favor of the Employees on their claim for unemployment benefits. On July 18, 2010, Bemis filed an appeal of the ALJ's decision, arguing that Bemis was denied due process because Bemis did not receive proper notice of the June 8, 2010 hearing. Attached to the appeal letter was the affidavit of Brown in which he acknowledged receiving the hearing notices, but was confused about their content. On August 20, 2010, the Review Board issued an order of remand that vacated the ALJ's decision and remanded the matter for a *de novo* hearing. The Review Board's order stated as follows:

> Upon a review of the Administrative Law Judge's case file, the Review Board finds that some of the jurisdictional exhibits necessary to establish the Administrative Law Judge's authority to hear the case are missing from the Administrative Law Judge's case file. The Review Board finds that the Appellate Division file was not properly preserved and that the Review Board cannot conduct an appropriate review of the Ad-

ministrative Law Judge's decision. For this reason, the Review Board finds that the case should be remanded for a new hearing.

*Id.* at 27.

The new hearing was held on October 29, 2010. The ALJ issued her decision in favor of Bemis on November 3, 2010, concluding that the Employees were unemployed from July 21, 2009 until September 2, 2009 as the result of an impasse reached during a labor dispute and, as such, were not entitled to unemployment compensation benefits. The Employees now appeal.

## DISCUSSION AND DECISION

### I. Order of Remand

█ The Employees contend that the Review Board erred by setting aside the ALJ's initial decision in their favor. They claim that Bemis had notice of the hearing, but failed to attend the hearing at which time Bemis could have presented its evidence.

The Review Board mailed its order of remand on August 20, 2010. The Employees did not appeal from that order and did not argue during the new hearing that the Review Board erred by remanding the matter. Indiana Appellate Rule 9(A)(3) provides that an appeal from an order, ruling, or decision of an administrative agency is commenced by filing a notice of appeal with the administrative agency within thirty days of the date of the order, ruling, or decision. Indiana Code section 22–4–17–11(a) provides that any decision of the Review Board shall become final fifteen days after the date the decision is mailed to the parties. Therefore, the Employees have waived this issue for our review.[2]

---

**2.** We express the hope that the Review Board will display the same degree of commitment to procedural due process in all future cases that it demonstrated here, that it will examine the records of the cases before it with the same diligence that it exercised here and that it will ensure that all "of the jurisdictional exhibits necessary to establish the Adminis-

## II. Sufficiency of the Evidence

The Employees next challenge the sufficiency of the evidence supporting the findings of fact and conclusion thereon in the ALJ's decision in favor of Bemis, which was affirmed by the Review Board. The Employees argue that the evidence supports a finding that they were locked out upon Cronin's threat of a strike, where Bemis knew Cronin had no such authority.

 Indiana's Unemployment Compensation Act ("the Act") provides that any decision of the Review Board shall be conclusive and binding as to all questions of fact. Ind.Code § 22–4–17–12(a). When the Review Board's decision is challenged as contrary to law, a court on review is limited to a two-part inquiry into: (1) the sufficiency of the facts found to sustain the decision; and (2) the sufficiency of the evidence to sustain the findings of facts. I.C. § 22–4–17–12(f). Under this standard, courts are called upon to review (1) determinations of specific or "basic" underlying facts, (2) conclusions or inferences from those facts sometimes called "ultimate facts," and (3) conclusions of law. *See McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind.1998). The Review Board's findings of basic fact are subject to a "substantial evidence" standard of review. *Id.* In this analysis, the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Review Board's findings. *Id.* The Review Board's conclusions as to ultimate facts involve an inference or deduction based on the findings of basic fact. *Id.* As such, they are

typically reviewed to ensure that the Review Board's inference is "reasonable" or "reasonable in light of [the Review Board's] findings." *Id.* at 1318. Legal propositions are reviewed for their correctness. *Id.*

 An employee is ineligible for unemployment compensation benefits for unemployment due to a stoppage of work that exists because of a labor dispute. Ind.Code § 22–4–15–3(a). Not every controversy concerning the terms and conditions of employment, however, constitutes a labor dispute under the Act. *Perfection Bakeries, Inc. v. Review Bd. of Dep't of Workforce Dev.*, 783 N.E.2d 736, 739–40 (Ind.Ct.App.2003). As we said in *Perfection Bakeries,*

> [a] labor dispute exists where the bargaining is not in a fluid state and an impasse has developed in the negotiations. An impasse is defined as an absence of an atmosphere in which a reasonably foreseeable settlement of the disputed issues might be resolved. A settlement is not reasonably foreseeable when the parties are deadlocked on certain crucial issues without which an ultimate agreement is not possible. If the facts indicate that good faith negotiations are being conducted between labor and management, and that bargaining is in a fluid state such that there is no impasse, neither party can declare a labor dispute.

783 N.E.2d at 740 (quoting *Auburn v. Review Bd. of Ind. Emp't. Sec. Div.*, 437 N.E.2d 1011, 1014 (Ind.Ct.App.1982)) (internal citations omitted).

trative Law Judge's authority to hear the case" are in every case "contained in the Administrative Law Judge's case file" and that the Appellate Division files will be properly

preserved" so that the Review Board is not prevented—as it found it was here—from conducting "an appropriate review of the Administrative Law Judge's decision".

The Employees argue that their situation is the same as the situation in *Perfection Bakeries* where we affirmed the Review Board's decision to affirm the ALJ's determination that the employees were entitled to unemployment compensation benefits. There, the ALJ found that the employees were not unemployed due to a labor dispute, and that the employees had not been locked out as the result of a threatened strike. *Id.* at 739–40. In that case, the union had not accepted the employer's contract offer by the deadline, had met the next day, and had agreed to return to work on the next scheduled work day. *Id.* at 739. The employees were locked out that day, however, and began picketing several days later. *Id.* We concluded that the evidence supported the findings and conclusions that the negotiations were in a fluid state, and that although previous threats of lock outs and strikes had been made, none were made at the relevant time. *Id.* at 741–42.

The case before us is quite different and our standard of review compels us to affirm the decision of the Review Board. Here, Cronin, whether authorized by Local 1426 or not, threatened a strike unless Bemis withdrew the temporary employee clause of the new CBA. Haberman stated that he could not remove the condition on behalf of Bemis, but would be willing to continue to negotiate. Cronin initially agreed to continue to negotiate, but then later declined to negotiate. Bemis then began an orderly shutting down of its operations. Employees who were willing to cross the picket lines were allowed to work. The evidence here does not support an inference that the Employees were locked out. The record before us does support the conclusion that an impasse had been reached on the issue of the temporary employee clause. We conclude that the evidence supports the findings of fact and the findings, in turn, support the conclusions thereon.

Affirmed.

BAKER, J., and BROWN, J., concur.