**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**DWAYNE BURNETT**
Gary, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD:[1]

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JANINE STECK HUFFMAN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Jan 25 2012, 9:25 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DWAYNE BURNETT, | ) |
| | ) |
| Appellant-Claimant, | ) |
| | ) |
| vs. | )    No. 93A02-1106-EX-607 |
| | ) |
| REVIEW BOARD OF THE INDIANA | ) |
| DEPARTMENT OF WORKFORCE | ) |
| DEVELOPMENT and OPPORTUNITY | ) |
| ENTERPRISES, INC., | ) |
| | ) |
| Appellees-Employer. | ) |

APPEAL FROM THE REVIEW BOARD OF THE
INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
The Honorable George H. Baker, Member, The Honorable Larry A. Dailey, Member
Case No. 11-R-02093

**January 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

---

[1] Our court granted the Employer's request to join in the Review Board's Appellee's Brief.

Dwayne Burnett[2] ("Burnett") appeals the decision of the Review Board of the Indiana Department of Workforce Development ("the Review Board"), which concluded that Burnett was discharged for just cause by his employer, Opportunity Enterprises, Inc. ("the Employer"), and, as such, is disqualified from receiving unemployment insurance benefits.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The relevant findings of fact and conclusion thereon, as found by the Review Board, were essentially as follows.[3] Burnett worked as a direct care professional for the Employer from June 18, 2007 until December 30, 2010. The Employer provides care for individuals with developmental disabilities; it supports "individuals who are profoundly challenged and have limited mobility as well as higher-functioning individuals who go to work every day." *Appellant's Br.* at 5. Burnett was a full-time employee, and his rate of pay at the time of separation was $9.55 per hour. Kathi Tilling, the Employer's Human Resource Director, discharged Burnett from his employment on December 30, 2010 and notified him that it was because of neglect of a client. *Appellant's App.* at 84.

Prior to his discharge, Burnett had received a warning on December 10, 2010, concerning his neglect of a client on December 9, 2010. The facts of that incident, as found

---

[2] We use the names of the claimant and the employer because they appear on the Appellant's Brief. Neither the claimant, the employer, nor the Review Board made an affirmative request pursuant to Adminstrative Rule 9(G)(1.2). In light of the absence of an affirmative request for continued confidentiality of the identies of the employee and the employer, we fully identify the parties. *See Recker v. Review Bd. of Ind. Dep't of Workforce Development*, 93S01-1105-EX-285, 2011 WL 6848389 ( Ind. Dec. 29, 2011).

[3] In its order denying Burnett's request for unemployment benefits, the Review Board incorporated by reference the findings of fact and conclusions thereon of the administrative law judge ("ALJ"). As such, the ALJ's findings of fact and conclusions thereon are also those of the Review Board.

2

by the Review Board, were essentially as follows.

> On December 9, 2010, a client who was to be watched 24 hours a day was left unsupervised for one hour while under [Burnett's] supervision. [Burnett] saw a car arrive and assumed that it was for the client's ride but did not watch the client enter the vehicle and leave. The client's QDDP[4] telephoned [Burnett] to ask why the client was not at the workshop. The [client] was located outside of the apartment and was standing inside the apartment building by the security doors.

*Id.* at 84-85.

The second and final incident occurred on December 30, 2010 and was classified by the Employer as neglect. *Id*. at 85. On the day in question, it was Burnett's job to supervise a client who "had [on other occasions] sexually targeted children and adults and was not to be left unsupervised." *Id*. A staff supervisor, Stephanie Zaharius ("the Supervisor"), however, noticed the client standing outside his residence, unsupervised. The Supervisor directed the client into his home and found Burnett. Although Burnett had been told that the client "was to be in his sight at all times," "was to have 24 hour supervision," and was "not to be left unsupervised," the Supervisor found Burnett sitting inside the client's home with the blinds closed, which made it impossible for Burnett to see the client. *Id*. Burnett gave the Supervisor various explanations for his behavior and told her that "he was going to open the blinds as soon as he was done with his paperwork." *Id*.

At the time of being hired, Burnett had been trained regarding treatment of clients. He had also received an employee handbook on September 16, 2008, which contained a section explaining that the Employer did not tolerate physical, verbal or sexual abuse, neglect or exploitation of persons served. *Id*. Burnett verified that he had been trained by the

3

Employer. *Id.* "[Burnett] was also aware of the [Employer's] Policy #6012 which covered abuse and neglect." *Id.* As defined in Policy #6012, neglect included "the refusal or *failure to provide* appropriate care, food, medical care, or *supervision.*" *Id.* at 71 (emphasis added). After the December 9, 2010 "allegation of neglect [was] substantiated," Burnett "was given a plan for improvement," which in pertinent part provided:

> [Burnett] will at all times ensure that a twenty[-]four hour supervised client is supervised and remains within eyesight. [Burnett] will also ensure that when clients are to be picked up or dropped off he provides constant supervision to that client. Supervision should continue until the client is picked up by another staff or family member.

*Id.* at 63, 77-78, 85.

In connection with the December 30, 2010 incident, a report was completed, noting that the client, a twenty-four-hour-supervised client, was outside his apartment alone. *Id.* at 80. When interviewed, Burnett stated that he was aware that the client had gone outside, and he admitted that the blinds were closed. *Id.* Burnett also said that he had not had a chance to open the blinds. *Id.* Burnett was discharged for "neglect." *Id.* at 85.

In explaining the justification for the dismissal after the second incident, the Review Board found that Burnett had "received a warning rather than being discharged for the first incident which occurred on December 9, 2010." *Id.* at 85.

> Valarie Thill, Social Services Senior Director, considered the fact that [Burnett] was reported with the roommate of the [client] for part or all of the time in question so she did not recommend that [Burnett] be discharged for the incident on December 9. [Burnett] received a corrective action in his personnel file. [Burnett] was counseled at that time about the importance of maintaining a clear understanding of this particular [client's] whereabouts during the morning routine.

[4] While the term QDDP is not defined in the record before us, in disability contexts, this term often means qualified developmental disability professional.

4

*Id.*

On February 18, 2011, a claims deputy for Workforce Development determined that Burnett was discharged by the Employer for just cause and, therefore, was ineligible for unemployment insurance benefits. Burnett filed an appeal from the deputy's determination, and a telephone hearing was held by an administrative law judge ("ALJ") on March 16 and continued to April 7, 2011. Following the hearing, the ALJ affirmed the deputy's determination that Burnett had been discharged for just cause, and as such, was ineligible for unemployment benefits. Burnett appealed, and the Review Board affirmed the ALJ's decision without a hearing. Burnett now appeals.

## DISCUSSION AND DECISION

Recently, our Supreme Court again set forth the standard of review on appeal of a review board decision, which is as follows:

> (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness. *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1318 (Ind. 1998). Ultimate facts are facts that "involve an inference or deduction based on the findings of basic fact." *Id.* at 1317. Where such facts are within the "special competence of the [b]oard," the Court will give greater deference to the [b]oard's conclusions, broadening the scope of what can be considered reasonable. *See id.* at 1318.

*Recker v. Review Bd. of Dep't of Workforce Dev.*, No. 93S02-1105-EX-285, 2011 WL 6848389 at *2 (Ind. Dec. 29, 2011).

Here, Burnett does not dispute the Review Board's findings of basic fact but rather only the reasonableness of its conclusion of ultimate fact—that he was discharged by the

5

Employer for just cause. Burnett contends that the December 30, 2010 incident, as presented by the Employer, reveals that "there was no 'intentional' violation of the company's policy or neglect in this case." *Appellant's Br.* at 6-7. It is Burnett's position that this "was purely a miscommunication that . . . the hearing officer, ALJ, and the Review Board failed to see, but rather sided with the [E]mployer without giving [Burnett] any credence as to his side of the matter." *Id*. at 7.

Burnett contends, in essence, that he did not breach a duty owed to his Employer because his failure to perform the task of keeping the twenty-four hour supervision was not willful or intentional. Instead, he contends that the incidents occurred because the Employer did "not provid[e] enough or adequate tools necessary for [employees] to do their job." *Appellant's Br.* at 6. As our Supreme Court noted in *Recker*, "[t]his argument, however, conflates the question of whether [Burnett] breached a duty to [the E]mployer with the separate question of whether [he] is at fault for the breach. Under *Giovanoni v. Review Board of Indiana Department of Workforce Development*, breach and fault are separate inquiries. *See* 927 N.E.2d 906, 908-12 (Ind. 2010)." *Recker*, 2011 WL 6848389 at *2.

Under the Unemployment Compensation System established by the General Assembly, an individual is disqualified from receiving benefits if discharged for just cause by the most recent employer. Ind. Code § 22–4–15–1(a). The statute delineates nine non-exclusive scenarios that can amount to "discharge for just cause." Ind. Code § 22–4–15–l(d). Under section 1(d)(2), just cause for discharge requires only the employee's "*knowing*

6

violation of a reasonable and uniformly enforced rule of the employer."[5]  Ind. Code § 22–4–15–l(d)(2) (emphasis added).

At the time of being hired, the Employer trained Burnett regarding various matters, including how to properly care for clients.  Later, in September 2008, Burnett received an employee handbook that contained a section explaining that the Employer did not tolerate neglect or exploitation of persons served.  *Appellant's App.* at 85.  Burnett verified that he had been trained by the Employer.  *Id.*  Additionally, he was aware of the Employer's Policy #6012, which defined neglect to include "the refusal or *failure to provide* appropriate care, food, medical care, or *supervision*."  *Id.* at 71, 85 (emphasis added).  After the December 9, 2010 "allegation of neglect [was] substantiated, Burnett "was given a plan for improvement."  *Id.* at 85.  This plan, in pertinent part, provided:

> [Burnett] will at all times ensure that a twenty[-]four hour supervised client is supervised and remains within eyesight.  [Burnett] will also ensure that when clients are to be picked up or dropped off he provides constant supervision to that client.  Supervision should continue until the client is picked up by another staff or family member.

*Id.* at 63.  On December 30, 2010, Burnett was again found to have violated the policy when his Supervisor found Burnett's client unattended outside his apartment, while Burnett was inside and unable to see his client because the blinds were closed.

Based on the above evidence, the Review Board found that Burnett "knowing[ly] violat[ed] the [E]mployer's rules concerning abuse and neglect.  It . . . concluded that the

---

[5] As part of his argument, Burnett contends that the ALJ and Review Board should have reviewed his claim pursuant to Indiana Code section 22-4-15-1(d)(3) instead of Indiana Code section 22-4-15-1(d)(2).  We disagree.  The former section addresses discharge for just cause in cases where an employer does not have a rule regarding attendance.  Here, we address the issue of discharge for just cause where the Employer does have a rule regarding neglect.

[E]mployer met its burden of proof to show that [Burnett] knowingly violated a reasonable and uniformly enforced rule of an employer . . . ." Ind. Code § 22-4-15-1(d)(2). The Review Board found that Burnett was discharged for just cause and, as such, was properly denied unemployment benefits. The Review Board's determination of the ultimate fact that Burnett was terminated for just cause is reasonable. The conclusion that Burnett is disqualified from receiving unemployment insurance is not contrary to law.

Affirmed.[6]

BARNES, J., and BRADFORD, J., concur.

---

[6] We commend the ALJ for the thoroughness of her findings that were adopted by the Review Board and greatly aided appellate review.