**FOR PUBLICATION**



FILED

Dec 11 2014, 10:37 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT *PRO SE*:

**TERESA A. FRITZ-LINT**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE REVIEW
BOARD OF THE INDIANA
DEPARTMENT OF WORKFORCE
DEVELOPMENT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE TRUTH
PUBLISHING CO., INC.:

**STEVEN M. BADGER**
Badger Law
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERESA A. FRITZ-LINT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1404-EX-243 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT and TRUTH | ) | |
| PUBLISHING CO., INC., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT OF

**December 11, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant Teresa Fritz-Lint was employed by Appellee Truth Publishing Co., Inc., ("Truth") and received training, which included review of Truth's anti-harassment policy ("the Policy"). The Policy defined harassment as including such things as jokes about another person's protected status and related that violation of the Policy could result in termination. Fritz-Lint's husband sent her an email containing a picture with the following caption: "Black people started wearing their pants low, white people called it 'saggin.' Spell saggin backwards … those sneaky white people." Fritz-Lint forwarded the email to two coworkers.

A few days later, somebody printed a copy of the picture and placed in on an African-American coworker's chair, who was offended and filed a complaint with Truth. Truth investigated, and while Fritz-Lint admitted that she had forwarded the email to two coworkers, she denied placing it on the African-American coworker's chair. Truth dismissed Fritz-Lint for violating its anti-harassment policy by distributing the email to other employees.

Fritz-Lint filed a claim for unemployment benefits, and a claims deputy from the Indiana Department of Workforce Development ("the Department") found that she had

2

been terminated for just cause and denied her claim. Fritz-Lint appealed and an administrative law judge ("ALJ") reversed the claims deputy. Truth appealed the ALJ's decision to Appellee the Department's Review Board ("the Board"), which reversed the ALJ. Fritz-Lint appeals, contending that Truth failed to establish that she directed the email at issue to a member of a protected class or placed a copy of the email on the chair of a member of a protected class. Because we conclude that it was not necessary for Truth to make either of those showings, we affirm the Board's determination.

## FACTS AND PROCEDURAL HISTORY

Fritz-Lint began working at Truth in 1996. As part of retraining in October of 2013, Fritz-Lint signed the Policy, which provides, in part, as follows:

> *The Elkhart Truth* is committed to maintaining a work environment that is free of discrimination. In keeping with this commitment, we will not tolerate harassment of *Elkhart Truth* employees by anyone, including any supervisor, co-worker, vendor, client, customer, or any third party.
>
> Harassment in violation of this policy consists of unwelcome conduct, whether verbal, physical, or visual, that is based upon a person's protected status, such as sex, color, race, religion, national origin, age, physical or mental disability, sexual orientation or other protected group status. *The Elkhart Truth* will not tolerate harassing conduct that affects tangible job benefits, that interferes unreasonably with an individual's work performance, or that creates an intimidating, hostile, or offensive working environment. Such harassment may include, for example, jokes about another person's protected status, kidding, teasing or practical jokes directed at a person based on his or her protected status.
> ….
> If an investigation confirms that a violation of the policy has occurred, *The Elkhart Truth* will take corrective action, including discipline, up to and including termination of employment.

Truth's Ex. 1. Truth enforces its anti-harassment policy with all employees.

3

On November 15, 2013, Fritz-Lint's husband sent her an email to which was attached a picture bearing the caption, "Black people started wearing their pants low, white people called it 'saggin.' Spell saggin backwards … those sneaky white people." Truth's Ex. 2. Later that day, Fritz-Lint forwarded the email to two coworkers with the message, "Be VERY careful who sees this. ☺" Truth's Ex. 2.

On or about November 18, 2013, a printed copy of the email was left on an African-American coworker's chair, who brought it to Truth's human resources manager and filed a complaint. On November 19, 2013, an investigation was conducted, and Fritz-Lint admitted that she had received the email from her husband and forwarded it because she found it to be a "funny joke[.]" Tr. p. 7. Fritz-Lint and both of the recipients of the forwarded email denied having placed it on their coworker's chair. Fritz-Lint was terminated the same day. Truth's Ex. 3.

Fritz-Lint applied for unemployment benefits, and on December 20, 2013, a Department claims deputy determined that she was not entitled to benefits as she had been terminated for just cause. Department Ex. 1. Fritz-Lint appealed the deputy's determination, and, on January 28, 2014, an ALJ held a hearing. On February 7, 2014, the ALJ issued its decision, in which it determined that Fritz-Lint had not violated the Policy because Truth failed to establish that she had sent "any racial material to the African American coworker." Ex. Vol. p. 23. Truth appealed the ALJ's decision, and, on March 14, 2014, the Board reversed the ALJ, concluding that Fritz-Lint "forwarded an email that she should have reasonably understood was a denigration of African

4

Americans and would be considered offensive material in violation of [Truth's] policy."

Appellant's Br. p. 13.

## DISCUSSION AND DECISION

### Standard of Review

> The Indiana Unemployment Compensation Act provides that any decision of the [R]eview [B]oard shall be conclusive and binding as to all questions of fact. Ind. Code § 22-4-17-12(a). Review Board decisions may, however, be challenged as contrary to law, in which case the reviewing court examines the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. Ind. Code § 22-4-17-12(f). Under this standard, we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions. *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind. 1998).
> When reviewing a decision by the Review Board, our task is to determine whether the decision is reasonable in light of its findings. *Abdirizak v. Review Bd. of Dept. of Workforce Development*, 826 N.E.2d 148, 150 (Ind. Ct. App. 2005). Our review of the Review Board's findings is subject to a "substantial evidence" standard of review. *Id.* In this analysis, we neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the Review Board's findings. *Id.* Further, we will reverse the decision only if there is no substantial evidence to support the Review Board's findings. *Id.*
> The Indiana Employment Security Act ("the Act"), Ind. Code § 22-4-17-1 *et seq.*, is given a liberal construction in favor of employees. *Id.* It merits such a construction because it is social legislation with underlying humanitarian purposes. *Id.* The Act provides that parties to a disputed claim for unemployment benefits are to be afforded a reasonable opportunity for a fair hearing. Ind. Code § 22-4-17-3.

*Quakenbush v. Review Bd. of Ind. Dep't of Workforce Dev.*, 891 N.E.2d 1051, 1053 (Ind. Ct. App. 2008).

Indiana Code section 22-4-15-1(d)(2) provides that "'Discharge for just cause' as used in this section is defined to include but not be limited to … knowing violation of a reasonable and uniformly enforced rule of an employer[.]" Fritz-Lint does not dispute

that the Policy is reasonable and uniformly enforced. Fritz-Lint argues that because Truth failed to prove that she forwarded the email to a person in a protected class or placed the email on the chair of the African American coworker, it has failed to establish that she violated the Policy. The Board and Truth both argue that Fritz-Lint violated the Policy by simply forwarding the email to coworkers, thereby contributing to the creation of "an intimidating, hostile, or offensive working environment." Truth Ex. 1.

We agree with the Board and Truth. Fritz-Lint admits to forwarding the email to coworkers, and, although she denied personally delivering it to her African-American coworker, her dissemination of the offensive material allowed that delivery to occur. Moreover, even if the offensive email had never found its way to the African-American coworker, the mere dissemination of such material, if left unchecked, could encourage the growth, spread, and acceptance of such attitudes in the workplace. In other words, such actions could contribute to the creation of a hostile work environment. We have little trouble concluding that the Board's decision that Fritz-Lint was dismissed for just cause, *i.e.*, for violating the Policy, is not contrary to law.

The determination of the Board is affirmed.

NAJAM, J., and MATHIAS, J., concur.