## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 31 2015, 9:07 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Christopher R. Erickson
SPANGLER, JENNINGS & DOUGHERTY, P.C.
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CM Sunshine Home Healthcare, <br> *Appellant,* <br><br> v. <br><br> Review Board of the Indiana Department of Workforce Development and Kimberly McClam, <br><br> *Appellees* | December 31, 2015 <br><br> Court of Appeals Case No. 93A02-1505-EX-397 <br><br> Appeal from the Review Board of the Department of Workforce Development <br><br> Steven F. Bier, Chairperson <br> George H. Baker, Member <br> Lawrence A. Dailey, Member <br><br> Case No. 15-RB-747 |

**Altice, Judge.**

## Case Summary

CM Sunshine Home Healthcare (Employer) appeals from the grant of unemployment insurance benefits to Kimberly McClam (Claimant) after Claimant was discharged from employment. The Review Board of the Indiana Department of Workforce Development (the Review Board) concluded that Claimant was terminated without just cause.

We affirm.

## Facts & Procedural History

Claimant began working for Employer in February 2014 as an administrative assistant. She was an outstanding employee and was quickly promoted to assistant administrator. Employer hired a secretary to handle entry-level work formerly done by Claimant. The new secretary was a relative of Employer's owners.

In September 2014, Claimant's live-in boyfriend suffered an aneurysm and was hospitalized for an extended period. Claimant continued to work throughout her boyfriend's serious illness but did attend to some minimal personal business during work. Claimant received a fax while at work from her boyfriend's doctor regarding disability. Employer found the form and gave it to Claimant.

At some point, Claimant also received a call from her boyfriend's doctor regarding the outcome of a procedure. The call came during an office meeting, and Claimant had to excuse herself. Employer offered Claimant time off to deal with the situation, but aside from one day when her boyfriend underwent surgery, Claimant declined the offer because she needed to work.

[5] Between September and October, Employer went through Claimant's desk. Employer considered the desk unorganized and found several items that appeared to be overdue for processing. Claimant explained at the hearing that she was waiting for information from nursing staff to complete these items. Claimant typically completed items within a few days of receiving them, although a few documents were nearly sixty days old.

[6] On October 17, 2014, Employer met with Claimant to discuss her performance. Employer reminded Claimant of the importance of the timeliness of documents and told her not to conduct personal business while at work. Claimant did not conduct any further personal business on company time.

[7] Thereafter, on November 20, 2014, Employer asked Claimant about some overdue therapy for a patient. This conversation included the nurse responsible for the patient. The nurse had yet to provide necessary paperwork to Claimant in order to process the therapy. This resulted in a delay of approximately seven to ten days for this patient.

[8] As a result of the delay, Employer again went through Claimant's desk and found many duplicates of documents and old documents. Claimant explained

at the hearing that the documents were organized in a way that she understood and any overdue documents had been received from others that week and would have been processed by the end of the week. Employer, however, did not give her an opportunity to explain at the time why there were duplicates or which items were waiting on action from another employee.

[9] Employer discharged Claimant on November 21, 2014, sending a termination letter about a month later. Claimant applied for unemployment benefits, which were initially denied by a claims deputy. Claimant appealed and a hearing was held before the Administrative Law Judge (the ALJ) on February 5, 2015. The ALJ reversed the initial determination and concluded that Claimant was not terminated for just cause. Employer appealed to the Review Board.

[10] On March 2, 2015, the Review Board vacated the ALJ's decision and remanded with instructions for the ALJ to include appropriate findings of fact and conclusions of law. On remand, the ALJ reviewed the evidence, without reopening the case, and issued a new decision on March 27, 2015. Once again, the ALJ found that Employer did not discharge Claimant for just cause. On April 17, 2015, the Review Board affirmed the ALJ's decision and adopted the ALJ's findings and conclusions. Employer now appeals. Additional facts will be provided below as necessary.

## Discussion & Decision

[11] The Indiana Unemployment Compensation Act provides that any decision of the Review Board shall be conclusive and binding as to all questions of fact.

Ind. Code § 22-4-17-12(a). "The standard of review on appeal of a decision of the [Review] Board is threefold: (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness." *Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1136, 1139 (Ind. 2011). In the analysis of the Review Board's findings of basic fact, we neither reweigh the evidence nor judge witness credibility; rather, we consider only the evidence most favorable to the Review Board's findings. *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.,* 693 N.E.2d 1314, 1317 (Ind. 1998).

[12]     In Indiana, an individual is ineligible to receive unemployment benefits if he or she was discharged for "just cause." Ind. Code § 22-4-15-1(a). Discharge for just cause is defined, in pertinent part, as "any breach of duty in connection with work which is reasonably owed an employer by an employee." I.C. § 22-4-15-1(d)(9). When applying a breach of duty analysis in this context:

>       the Board should consider whether the conduct which is said to
>       have been a breach of a duty reasonably owed to the employer is
>       of such a nature that a reasonable employee of the employer
>       would understand that the conduct in question was a violation of
>       a duty owed the employer and that he would be subject to
>       discharge for engaging in the activity or behavior.

[13]     *Recker*, 958 N.E.2d at 1140 (quoting *Hehr v. Review Bd. of Ind. Employment Sec. Div.,* 534 N.E.2d 1122, 1126 (Ind. Ct. App. 1989)). Whether an employee breaches a duty owed to the employer "is a very fact-sensitive determination

which must be made on a case by case basis." *Hehr,* 534 N .E.2d at 1127. *See also P.K.E. v. Review Bd. of Ind. Dep't. of Workforce Dev.,* 942 N.E.2d 125, 132 (Ind. Ct. App. 2011) ("duties reasonably owed to the employer by the employee may vary considerably depending on the circumstances"), *trans. denied.*

[14] The Indiana Department of Workforce Development has promulgated a regulation interpreting the term "breach of duty" as used in I.C. § 22-4-15-1(d)(9). The regulation presents several non-exclusive examples of "breach of duty reasonably owed to an employer", including that the claimant: "damaged the employer's trust and confidence in the claimant's ability to effectively perform the job", "willfully failed to meet the employer's reasonable expectation", and "showed carelessness or negligence to such a degree, or with such recurrence, as to cause damage to the employer's interests." 646 Ind. Admin. Code 5-8-6(b)(1), (2), (7).

[15] After setting out its findings of fact and the pertinent law, the ALJ concluded in relevant part:

> Claimant owed Employer a reasonable duty to meet her Employer's reasonable expectation for job performance. Employer identified two main areas where Employer was unsatisfied with Claimant's work performance. The first was completing [personal] business on company time. The second was failing to complete her responsibilities in a timely manner.
>
> The [ALJ] concludes that Claimant did not willfully fail to meet Employer's reasonable expectation by completing personal business on company time. Claimant did perform a minimal amount of personal business while at work. Claimant's

boyfriend suffered a life-threatening illness. Claimant at times needed to address the issue while at work. This included receiving a minimal amount of faxes and taking a call from her boyfriend's doctor concerning his surgery. Claimant kept personal business to a minimum and only conducted the business that was critical to the perilous condition of her boyfriend. When [Employer] told Claimant to stop conducting the business at work, Claimant stopped.

The second noted deficiency in Claimant's performance was her timeliness of completing documents. Employer alleged that Claimant's desk was unorganized and that she had many duplicate items. Employer went through Claimant's desk when Claimant was not there in September or October. Claimant did admit she had multiple copies of items. There were also items waiting on a response from Claimant's coworkers. Employer went through the desk when Claimant was not present, and thus Claimant did not have the opportunity to explain why there were duplicates or items waiting on a response from others.

Employer pointed to a specific example that Claimant caused a 7-10 day delay in therapy for a particular patient. [A] nurse rather than Claimant was responsible for ordering the therapy. The other nurse did not provide Claimant with the order or any indication that Claimant should have ordered therapy for this patient. This was beyond Claimant's control.

Claimant did her best to meet Employer's expectation. Claimant committed no volitional act against Employer. When any deficiency was brought to Claimant's attention, she did her best to correct it. Overdue paperwork in the Claimant's desk was waiting for action from other employees. The failure of other coworkers to provide Claimant with timely action was beyond Claimant's control. The [ALJ] concludes that Claimant did not willfully fail to meet Employer's reasonable expectation.

Employer discharged Claimant but not for just cause as defined by Ind. Code 22-4-15-1(d)(9) and 646 Ind. Admin. Code 5-8-6.

*Appellant's Appendix* at 7-8.

[16] Employer initially argues on appeal that the ALJ erred by applying only 646 I.A.C. 5-8-6(b)(2) to determine whether Claimant breached a duty reasonably owed to Employer. Specifically, Employer contends that the ALJ should have also considered whether Claimant's performance of personal tasks on company time damaged Employer's trust and confidence in her ability to effectively perform her job and whether her lack of organization and multiple unprocessed referral orders showed carelessness or negligence to such a degree, or with such recurrence, as to damage Employer's interests.

[17] Although the record reveals that Employer filed a twenty-three-page appeal with the Review Board, Employer has not provided that document on appeal. Accordingly, we cannot determine whether Employer raised these alternative grounds for finding a breach of duty (646 I.A.C. 5-8-6(b)(1) and (7)) below.

[18] Further, even though the ALJ focused its attention on 646 I.A.C. 5-8-6(b)(2), it is evident that the ALJ did not agree with Employer's assessment of Claimant's job performance. The ALJ expressly found that Claimant performed only a minimal amount of personal business while at work and stopped doing so once Employer addressed the issue. Such a finding is clearly contrary to Employer's assertion that this conduct damaged Employer's trust and confidence in her ability to effectively perform her job.

[19]     With respect to the allegations regarding Claimant's organizational skills and untimely processing of referral orders, the ALJ determined that Employer never provided Claimant with an opportunity to explain her organization system or why there appeared to be unprocessed orders.  Moreover, to the extent there were delays in processing orders for therapy, the ALJ concluded that this was due to the failure of other coworkers to provide Claimant with necessary orders or information.  These delays, according to the ALJ, were beyond Claimant's control.  Thus, our review of the ALJ's findings and conclusions, which were expressly adopted by the Review Board, indicates that Claimant was not careless or negligent to such a degree, or with such recurrence, as to damage Employer's interests.

[20]     In addition to the argument based on 646 I.A.C. 5-8-6(b), Employer contends that the ALJ's decision ignored competent evidence.  Employer asserts, "the ALJ appears to support his decision solely on the Claimant's testimony without addressing the Employer's admitted exhibits and testimony contrary to Claimant's."  *Appellant's Brief* at 8.  Specifically, Employer directs us to evidence indicating that Claimant conducted more than a minimal amount of personal business while working and continued to do so after being warned by Employer.  Employer also notes contrary testimony regarding the cause of a delayed referral order and evidence that Claimant failed to properly train the new secretary.

[21]     We reject Employer's invitation to reweigh the evidence and judge witness credibility.  *See McClain,* 693 N.E.2d at 1317.  Employer and Claimant, the only

witnesses to testify, presented vastly conflicting evidence. The ALJ did not ignore competent evidence. It simply believed Claimant, which was within the ALJ's discretion.

[22] Decision affirmed.

Robb, J., and Barnes, J., concur.